LONG ISLAND LIGHTING COMPANY,
Plaintiff–Appellee, Cross–Appellant,

v.

Mario M. CUOMO, in his official capacity
as Governor of the State of New York,
Peter A. Bradford, in his official capac-
ity as Chairman of the New York State
Public Service Commission, Harold A.
Jerry, Jr., Gail Garfield Schwartz, Eli
M. Noam, James T. McFarland, Edward
M. Kresky and Henry G. Williams, in
their official capacities as Commission-
ers of the New York State Public Ser-
vice Commission, the Long Island Pow-
er Authority, and William L. Mack, Irv-
ing Like, Nora Bredes, Leon Campo,
Richard Kessel, Stephen Liss, Vincent
Tese, John Adam Kanas, and Martin
Bernstein, in their official capacities as
Trustees of the Long Island Power Au-
thority, Defendants,

Shoreham–Wading River Central School
District and the Assessor and the Board
of Assessment for the Town of Brook-
haven, Intervenors–Defendants,

New York State Public Service Commis-
sion, Mario M. Cuomo, Long Island
Power Authority, Defendants–Appel-
lants, Cross–Appellees.

Nos. 654, 655, 661, Dockets 87–7759,
87–7761, 87–7855.

United States Court of Appeals,
Second Circuit.

Argued Jan. 25, 1988.

Dismissed by order Jan. 18, 1989.

Reinstated July 21, 1989.

Decided Oct. 18, 1989.

Michael Lesch, New York City (John G.
Nicolich, Barry V. Sautman, Shea & Gould,
New York City, Anthony F. Earley, Jr.,
General Counsel, Long Island Lighting Co.,
of counsel), for appellant Long Island
Lighting Co.

Lawrence G. Malone, Albany, N.Y. (Rob-
ert A. Simpson, Acting Counsel, New York
State Dept. of Public Service, Margery F.
Baker, Jonathan D. Feinberg, New York
State Dept. of Public Service, Albany, N.Y.,
of counsel), for appellant New York State
Public Service Com'n.

Robert Abrams, Atty. Gen. of the State
of N.Y., O. Peter Sherwood, Sol. Gen., John
W. Corwin, Alfred L. Nardelli, Mary M.
Gundrum, Samuel A. Cherniak, Harvey
Berman, Asst. Attys. Gen., Fabian Palomi-
no, Sp. Counsel to the Governor, New York
City, for appellant Governor Mario M. Cuo-
mo.

David A. Brownlee, Pittsburgh, PA (Michael J. Lynch, Kenneth M. Argentieri, Kirkpatrick & Lockhart, Pittsburgh, PA, Herbert H. Brown, Lawrence Coe Lanpher, Kirkpatrick & Lockhart, Washington, D.C., of counsel), for appellees Long Island Power Authority and Its Individual Trustees.

K. Dennis Sisk, New York City (David F. Peters, Edward M. Barrett, George V. Cook, Hunton & Williams, New York City, Anthony F. Earley, Jr., General Counsel, Long Island Lighting Co., of counsel), for appellee Long Island Lighting Co.

Before MESKILL, ALTIMARI * and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

Defendants-appellants Mario M. Cuomo, Governor of the State of New York, and the New York State Public Service Commission (PSC) appeal from that part of a judgment entered in the United States District Court for the Northern District of New York, Munson, *C.J.*, that granted plaintiff-appellee Long Island Lighting Company's (LILCO) motion for summary judgment and declared the Used and Useful Act, N.Y.Pub.Serv.Law § 66(24) (McKinney 1989) (UAU Act), violative of the Equal Protection Clause of the United States Constitution. LILCO cross-appeals from the district court's adverse determination of LILCO's other constitutional challenges to the Used and Useful Act, and appeals from both the court's grant of summary judgment for defendants on LILCO's constitutional challenges to the Long Island Power Authority Act, N.Y. Pub.Auth.Law §§ 1020 to 1020–hh (McKinney Supp.1989) (LIPA Act), and its dismissal of LILCO's conspiracy claim under 42 U.S.C. § 1983 (1982) against Governor Cuomo. Because the parties to this appeal have agreed to terminate their litigation, we dismiss the appeal, vacate the judgment below in part and remand to the district court with instructions to dismiss portions of the complaint as moot. The district

court's opinion is reported at 666 F.Supp. 370 (N.D.N.Y.1987).

## BACKGROUND

LILCO commenced this action in January 1987 to challenge New York state legislation enacted as part of an effort by the state of New York to prevent the federal licensing and the operation of the Shoreham Nuclear Power Plant, located on Long Island Sound in Suffolk County, New York. LILCO is a utility company organized under the laws of New York and the sole owner of the Shoreham plant. The PSC regulates many aspects of LILCO's operations, including the rates that LILCO charges its customers.

In 1986, the New York legislature enacted both the UAU Act and the LIPA Act. The UAU Act prohibits the PSC from including any of Shoreham's costs in LILCO's rate base unless, *inter alia*, the Shoreham plant commences commercial operation by January 3, 1989,[1] an event that did not occur. The LIPA Act created the Long Island Power Authority (LIPA) and authorized it to acquire the securities or assets of LILCO through either a purchase or the power of eminent domain.

### A. Proceedings in the District Court

LILCO's complaint named several defendants, including the PSC, LIPA and Governor Cuomo. LILCO attacked both the UAU Act and the LIPA Act as, *inter alia*, bills of attainder in violation of article I, section 10 of the United States Constitution, abuses of the state's police power violative of the Due Process Clause of the Fourteenth Amendment, and denials of equal protection of the law, also in violation of the Fourteenth Amendment. In addition, LILCO claimed that Governor Cuomo had violated 42 U.S.C. § 1983 by conspiring with various officials to prevent the operation of the Shoreham plant.

---

* Judge Feinberg, an original member of the panel, recused himself following oral argument. Judge Altimari was designated to replace him as a member of the panel.

1. This date is forty-two months after LILCO's receipt of a low-power testing license from the Nuclear Regulatory Commission.

Upon the motions of various defendants to dismiss or for summary judgment, the district court granted summary judgment for defendants on LILCO's challenges to the LIPA Act and dismissed its section 1983 claim against Governor Cuomo. The district court also granted LILCO's motion for partial summary judgment, and held that the UAU Act denied LILCO equal protection under the Fourteenth Amendment. The court accordingly enjoined the PSC from implementing or enforcing the UAU Act. The court further held, however, that the UAU Act was neither a bill of attainder nor a deprivation of due process.

### B. *Appellate Proceedings*
#### 1. *The Appeal and Initial Settlement Negotiations*

The PSC and Governor Cuomo appealed the district court's adverse holding as to the UAU Act, and LILCO cross-appealed the district court's determination that the UAU Act was neither a bill of attainder nor a deprivation of due process. LILCO appealed both the court's sustainment of the LIPA Act against all challenges and its dismissal of the section 1983 claim against Governor Cuomo. Oral argument took place on January 25, 1988.

While these appeals were pending, Governor Cuomo and LILCO engaged in highly publicized settlement negotiations concerning the Shoreham Nuclear Power Plant. We initially requested reargument on the effect of these negotiations on the appeals, but subsequently agreed to accept a status report from the parties in lieu of oral argument. We reserved the right to reschedule briefing and argument after consideration of the status report.

After several months, the negotiations still had not led to a final settlement. By order dated January 18, 1989, we dismissed the appeals without prejudice to their being reinstated upon notice to the Court within ninety days.[2] By subsequent orders, we extended the time for reinstatement until July 21, 1989.

#### 2. *1989 Settlement Agreement*

On February 28, 1989, LILCO and Governor Cuomo entered into a settlement agreement (Settlement Agreement) pursuant to which LILCO would transfer the Shoreham plant to LIPA.[3] The Settlement Agreement provides, in pertinent part:

> The parties herein that are also parties to the litigation currently pending before the United States Court of Appeals for the Second Circuit, entitled *LILCO v. Cuomo, et al.*, agree to stipulate to a discontinuance of the litigation based upon this agreement as soon as practical. The related LILCO motion for attorneys' fees pending before the United States District Court (N.D.N.Y.) will be withdrawn with prejudice. *The settlement shall be with prejudice, except that the withdrawal of LILCO's appeal shall be without prejudice and may be reinstated in the event LIPA attempts to acquire an interest in LILCO by any means, including tender offer, merger offer, condemnation or proxy contest.* The parties to the LILCO appeal shall consent to any motion by LILCO to preserve its right to prosecute such appeal consistent with the above conditions. The settlement of this litigation shall be contingent upon the effectiveness of this agreement.

(emphasis added).

On July 18, 1989, LILCO moved this Court for an order on consent that would modify our prior orders and dismiss the appeals pursuant to the parties' Stipulation of Voluntary Dismissal dated July 13, 1989, which was intended to implement the quot-

---

2. Our dismissal orders refer only to "the appeal" or "the above appeals." The parties have proceeded under the assumption that we in fact dismissed both the appeals and LILCO's cross-appeal, and we wish to clarify that such was our intention. Similarly, in dismissing "the appeal" today we refer to both LILCO's appeal and its cross-appeal.

3. LIPA is not named as a party to the Settlement Agreement, but the effectiveness of the Settlement Agreement was contingent on LIPA's approval, as well as the approvals of other entities and groups. The trustees of LIPA subsequently granted their approval. LIPA is a party to the Stipulation of Voluntary Dismissal, discussed *infra*.

ed language from the Settlement Agreement. We denied this motion on July 20, 1989. To preserve its ability to seek review, LILCO reinstated its appeal on July 21. The PSC and Governor Cuomo did not reinstate their appeals. Thus, the only issues arguably left for resolution are LILCO's constitutional challenges to the LIPA Act and the dismissal of its section 1983 claim against Governor Cuomo.

By order dated August 9, 1989, we directed the parties to submit simultaneous letter briefs addressing the question of mootness.

## DISCUSSION

Article III, section 2 of the United States Constitution limits the federal judicial power to enumerated cases and controversies. Moot cases no longer present live controversies, and therefore federal courts have no jurisdiction to decide them. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (per curiam). A case may become moot even on appeal. *See Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). Thus, if the present case has become moot, we are simply without power to review the district court's judgment.

Pursuant to the Settlement Agreement, the parties to this appeal have agreed to terminate their litigation. Such an agreement clearly renders this case moot. *See, e.g., Douglas v. Donovan*, 704 F.2d 1276, 1278–1279 (D.C.Cir.1983); *Amalgamated Clothing and Textile Workers Union v. J.P. Stevens & Co.*, 638 F.2d 7, 8 (2d Cir. 1980) (per curiam). LILCO and LIPA dispute neither the mootness of the action nor the necessity of a dismissal of LILCO's appeal. The only point of contention is whether we should let stand the district court's judgment or vacate it and remand with instructions to dismiss.

Our usual practice in dismissing an appeal as moot is to vacate the judgment below. *See, e.g., Jefferson v. Abrams*, 747 F.2d 94, 97 (2d Cir.1984); *Amalgamated Clothing*, 638 F.2d at 8; *Ringgold v. United States*, 553 F.2d 309, 310 (2d Cir.1977) (per curiam). This procedure conforms to the view expressed by the Supreme Court in *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178 (1936) (per curiam), that, when "it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the cause with directions to dismiss." *Id.* at 267, 57 S.Ct. at 205. Vacating the district court's judgment preserves the rights of the parties by preventing a judgment, review of which was foreclosed by "happenstance," from having a binding effect. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–107, 95 L.Ed. 36 (1950); *see also Deakins v. Monaghan*, 484 U.S. 193, 200, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988) (proper procedure for moot actions is vacatur of judgment below).

LIPA argues that the district court's judgment should not be disturbed because the Settlement Agreement contemplated that the judgment would remain in effect, and because vacatur of the judgment is not appropriate when, as here, mootness is the result not of happenstance, but of deliberate action by the party who lost below. *See Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 721 (9th Cir.1982) (if post-judgment settlements automatically resulted in vacatur of the judgment below, any dissatisfied litigant could have unfavorable findings "wiped from the books"); *see also Karcher v. May*, 484 U.S. 72, 82–83, 108 S.Ct. 388, 395–396, 98 L.Ed.2d 327 (1987) (*Munsingwear* procedure inapplicable when losing party declines to pursue appeal).

We find these arguments unpersuasive. First, the Settlement Agreement provides that LILCO's appeal is to be withdrawn without prejudice and that it may be reinstated in the event that LIPA attempts to acquire an interest in LILCO. Thus, the parties agreed that the district court's judgment should not be the final word on the issues at hand. Further, leaving the judgment below in place would prevent LILCO from pursuing its remedies in the event of a takeover attempt by LIPA: LIPA would simply assert that the pre-

scribed time for taking an appeal has passed and that the doctrine of *res judicata* prohibits relitigation of LILCO's constitutional challenges to the LIPA Act. By the terms of the Settlement Agreement, then, the parties have agreed that LILCO's right to appellate review should be preserved, and the only way in which this can be accomplished is if the district court's judgment is vacated.

Second, as we noted in *Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir.1985), the exception to the practice of vacating the lower court's judgment because of the deliberate action of the losing party does not apply to situations in which both parties have agreed on settlement and vacatur of the judgment below. *Id.* at 283.[4] The parties here clearly agreed on settlement and necessarily agreed on vacatur of the district court's judgment. *See generally* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.10, at 432 (2d ed. 1984) (appellant and appellee can bargain in settlement negotiations for whatever future protection they need).

LIPA argues that it will sustain prejudice through this disposition because it will be deprived of a decision upholding the validity of the legislation that created it. We disagree. Vacatur of the judgment will in no way affect LIPA's continued existence, and under the terms of the Settlement Agreement LILCO can reinstitute its constitutional challenges to the LIPA Act only upon action by LIPA itself. The key to the locked courthouse door will remain in LIPA's own pocket.

We have considered LIPA's other arguments in opposition to vacatur of the district court's judgment, and find them to be without merit.

## CONCLUSION

The parties have agreed to terminate this litigation. Their agreement renders this action moot, and under the circumstances of this case it is our duty to dismiss the appeal, vacate those portions of the district court's judgment that (1) granted summary judgment to defendants on LILCO's constitutional challenges to the LIPA Act, and (2) dismissed LILCO's claim against Governor Cuomo under 42 U.S.C. § 1983, and remand to the district court with instructions to dismiss the appropriate parts of the complaint.[5]

---

4. We note that the Supreme Court's decision in *Karcher v. May*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), does not affect our practice of vacating the district court's judgment when parties settle pending appeal. *Karcher* involved an action that became moot because the legislative officers taking the appeal lost their posts as presiding officers. Their replacements declined to pursue the appeal. *Id.* at 75–76, 108 S.Ct. at 391–392. Thus, *Karcher* was in essence a case in which the losing party did not appeal. In the present action, LILCO is not declining to pursue its appeal (and in fact urges us to reach the merits if we find the case not moot), but has agreed not to do so in return for certain conces-

sions from the defendants. Leaving a lower court's judgment intact in this situation would only serve to discourage and hamper settlement negotiations.

5. Although we dismiss the appeal in its entirety, we do not vacate that part of the district court's judgment that declared the UAU Act a denial of equal protection under the Fourteenth Amendment. The PSC and Governor Cuomo did not reinstate their appeal from that ruling. Accordingly, we must let that part of the judgment stand under the rule announced in *Karcher,* 484 U.S. at 82–83, 108 S.Ct. at 395–396, that vacatur is not appropriate when the losing party declines to pursue its appeal.