PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1838
_____

LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA;
CARMEN FEBO SAN MIGUEL; JAMES SOLOMON;
JOHN GREINER; JOHN CAPOWSKI;
GRETCHEN BRANDT; THOMAS RENTSCHLER; MARY
ELIZABETH LAWN; LISA ISAACS; DON LANCASTER;
JORDI COMAS; ROBERT SMITH; WILLIAM MARX;
RICHARD MANTELL; PRISCILLA MCNULTY;
THOMAS ULRICH; ROBERT MCKINSTRY; MARK
LICHTY; LORRAINE PETROSKY

v.

THE COMMONWEALTH OF PENNSYLVANIA; THE
PENNSYLVANIA GENERAL ASSEMBLY; GOVERNOR
OF PENNSYLVANIA, in his capacity as governor of
Pennsylvania; MICHAEL J. STACK, III, in his capacity as
Lieutenant Governor of Pennsylvania and President of the
Pennsylvania Senate; MICHAEL C. TURZAI, in his capacity
as Speaker of the Pennsylvania House of Representatives;
JOSEPH B. SCARNATI, III, in his capacity as Pennsylvania
Senate President Pro Tempore; SECRETARY OF THE
COMMONWEALTH OF PENNSYLVANIA;

COMMISSIONER OF THE BUREAU OF COMMISSIONS, ELECTIONS, AND LEGISLATION OF THE PENNSYLVANIA DEPARTMENT OF STATE

Joseph B. Scarnati, III,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 2-17-cv-05137
(District Judge: Honorable Michael M. Baylson)
_____

Argued: November 7, 2018

Before: AMBRO, SCIRICA, and RENDELL,
*Circuit Judges*.

(Filed: April 24, 2019)


Matthew H. Haverstick [ARGUED]
Shohin H. Vance
Joshua J. Voss
Kleinbard
Three Logan Square
1717 Arch Street
5th Floor
Philadelphia, PA 19103

*Counsel for Appellant*

2

Sara M. D'Amico
Daniel F. Jacobson
R. Stanton Jones
John J. Robinson
Elisabeth S. Theodore [ARGUED]
Arnold & Porter Kaye Scholer
601 Massachusetts Avenue, N.W.
Washington, DC  20001

Benjamin D. Geffen
Mary M. McKenzie
Public Interest Law Center of Philadelphia
1709 Benjamin Franklin Parkway
United Way Building
2nd Floor
Philadelphia, PA  19103

    *Counsel for Appellees League of Women Voters of
Pennsylvania, Carmen Febo San Miguel, James Solomon,
John Greiner, John Capowski, Gretchen Brandt, Thomas
Rentschler, Mary Elizabeth Lawn, Lisa Isaacs, Don
Lancaster, Jordi Comas, Robert Smith, William Marx,
Richard Mantell, Priscilla McNulty, Thomas Ulrich, Robert
McKinstry, Mark Lichty, and Lorraine Petrosky*

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge*

3

In 2017, the League of Women Voters and a group of Pennsylvania Democratic voters filed a state court lawsuit challenging Pennsylvania's 2011 congressional districting map. The suit alleged the state's Republican lawmakers drew the congressional map to entrench Republican power in Pennsylvania's congressional delegation and disadvantage Democratic voters. Plaintiffs contended the Republican redistricting plan violated the Pennsylvania Constitution by burdening and disfavoring Democratic voters' rights to free expression and association and by intentionally discriminating against Democratic voters, disadvantaging their representational rights.

This appeal, although arising from that litigation, does not involve the substance of the underlying state constitutional challenge. Rather, it involves a fee dispute stemming from a brief period during which the suit was before a federal district court. Some five months after the suit was filed in state court, defendant State Senate President Pro Tempore Joseph Scarnati—a Republican lawmaker who sponsored the 2011 redistricting plan—removed the matter to federal court, contending federal jurisdiction existed because of a newly scheduled congressional election. Following a burst of filings and an emergency hearing, the federal District Court remanded the matter to state court, where the suit continued and has since concluded.[1] Relying on 28 U.S.C. § 1447(c), the federal court later directed Senator Scarnati personally to pay $29,360 to plaintiffs for costs and fees incurred in the removal and remand

---

[1]     The Pennsylvania Supreme Court ultimately ruled in plaintiffs' favor, declaring that the 2011 redistricting plan violated the Pennsylvania Constitution. *League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 741 (Pa. 2018).

proceedings.

Senator Scarnati disputes whether he—a party to the case only in his official capacity as President Pro Tempore of the State Senate—should have been held personally liable for the costs and fees award. Recognizing the Supreme Court's directive that courts carefully adhere to the distinction between personal and official capacity suits, we will resolve this issue in favor of Senator Scarnati. As to his other challenges to the award, we conclude the District Court did not abuse its discretion in holding the removal lacked an objectively reasonable basis, nor in calculating the proper costs and fees to be awarded. Accordingly, we will affirm those parts of the Court's order, reverse its order holding Senator Scarnati personally liable, and remand for further proceedings.

## I.

## A.

As noted, on June 15, 2017, plaintiff-appellees—eighteen Pennsylvania Democratic voters—filed a petition in the Pennsylvania Commonwealth Court contending Pennsylvania's 2011 congressional districting plan was a product of partisan gerrymandering that violated the Pennsylvania Constitution.[2] According to the petition, in 2011 Republican state lawmakers "dismantled Pennsylvania's existing congressional districts and stitched them back together

---

[2] The League of Women Voters of Pennsylvania was also a party in the state court action. The Commonwealth Court dismissed the organization from the suit before it was removed to federal court. *See* Joint Appendix (App.) 342.

5

with the goal of maximizing the political advantage of Republican voters and minimizing the representational rights of Democratic voters." Joint Appendix (App.) 45. The suit named as defendants various state officials, all "in their official capacities as parties who would be responsible for implementing the relief" sought. App. 56. These included Governor Thomas Wolf; Secretary of the Commonwealth Pedro Cortés; Bureau of Commissions, Election, and Legislation Commissioner Jonathan Marks; Lieutenant Governor Michael Stack; Speaker of the Pennsylvania House of Representatives Michael Turzai; and Senate President Pro Tempore Scarnati. The Commonwealth and the General Assembly were also named as defendants.

Four months later, the Commonwealth Court stayed the case on the motion of defendants Senator Scarnati, Representative Turzai, and the General Assembly. Due to the delay in the Commonwealth Court, plaintiffs asked the Pennsylvania Supreme Court to assume extraordinary jurisdiction to resolve the case before the 2018 congressional elections. On November 9, the Pennsylvania Supreme Court granted plaintiffs' request because the "case involves issues of immediate public importance." App. 320. It vacated the stay and ordered "expeditious[]" proceedings below, setting a year-end deadline for the Commonwealth Court to conduct a trial. *Id.* On November 13, the Commonwealth Court issued an expedited scheduling order, with trial set for December 11, 2017.

**B.**

The day after the Commonwealth Court issued its scheduling order, Senator Scarnati removed the case to the

6

United States District Court for the Eastern District of Pennsylvania. *See* 28 U.S.C. § 1441(a). Although the underlying petition included only state law claims, he contended there was federal question jurisdiction because, on October 23, 2017, Governor Wolf issued a Writ of Election to set a special election for a newly vacant seat in Congress. *See* U.S. Const. art. I, § 2, cl. 4 ("When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies."). Senator Scarnati maintained that because the Writ was issued under the United States Constitution, it introduced a "substantial question of federal law" into the case—whether a state court could "strike down" a congressional district for which a special election was already scheduled. App. 24. In the notice of removal, Senator Scarnati averred that Representative Turzai and the General Assembly had consented to removal, and contended he did not need the consent of the other defendants because of their "nominal" status. App. 25–26.

Plaintiffs learned of the removal the next day, November 15, and within twenty-four hours filed an emergency motion to remand to state court. The United States District Court scheduled a hearing for that afternoon on plaintiffs' motion to remand. Right before the hearing, Senator Scarnati filed his own emergency motion seeking remand to state court. The motion explained that there was a misunderstanding with Representative Turzai, who did not actually consent to removal. The District Court held its hearing—attended by plaintiffs' counsel who traveled from Washington, D.C.—and then granted Senator Scarnati's motion, remanding the case to state court.

**C.**

7

In accordance with the District Court's remand order, plaintiffs asked for, under 28 U.S.C. § 1447(c), "payment of just costs and . . . attorney fees[] incurred as a result of the removal." They sought: (1) $49,616.50 in attorneys' fees, which covered 82 hours of work by 10 attorneys from the Washington, D.C. office of Arnold & Porter Kaye Scholer and the Public Interest Law Center of Philadelphia (PILCOP); and (2) $3,120.02 in costs for travel and legal research expenses. Those fees and costs had been incurred preparing the remand motion, preparing for and attending the emergency hearing, and preparing the costs motion itself. Plaintiffs also suggested sanctions were warranted under Federal Rule of Civil Procedure 11 or the Court's inherent authority. Finally, they contended "Senator Scarnati and his counsel . . . should be held jointly and severally liable" for any award to "avoid placing the burden for such fees and costs on Pennsylvania taxpayers." App. 400.

The District Court granted plaintiffs' motion and awarded costs and fees under § 1447(c). *League of Women Voters of Pa. v. Pennsylvania*, No. 17-5137, 2018 WL 1787211, at *6 (E.D. Pa. Apr. 13, 2018). It held removal was improper because Senator Scarnati had no basis for believing that removal was timely or that he did not need the consent of the executive branch defendants. *Id.* at *4–5. The Court did not "stat[e] any opinion on whether there was 'colorable' federal jurisdiction," and did "not come to any conclusion that improper motive or bad faith [was] involved." *Id.* at *6.

Turning to the amount of the award, the Court found that all written work by plaintiffs' counsel was "excellent," *id.*, and that the removal action "amounted to an 'emergency situation,'" *id.* at *7, necessitating "[a] good deal of urgent

8

research and preparation," *id.* at \*6. It recognized that with "numerous attorneys in two different locations" there was "some perhaps unavoidable duplication of effort" by plaintiffs' lawyers, and so reduced the hours by twenty percent. *Id.* at \*7. The Court determined it would only award fees at a prevailing local rate in Philadelphia rather than the higher rates billed by the Washington, D.C. lawyers, *id.* at \*6, and applied a "blended hourly rate" of $400 per hour, which it found was "a fair median hourly rate for the PILCOP lawyers," *id.* at \*7. The resulting fee award was $26,240, and the Court also awarded the full $3,120.02 in costs. *Id.* Finally, and without explanation, the Court found "Senator Scarnati should personally be liable for these fees and costs." *Id.* at \*8. He appeals.[3]

## II.

The primary issue on appeal is whether the District Court erred in imposing personal liability on Senate President

---

[3]     The District Court had jurisdiction under 28 U.S.C. § 1441 to consider whether the matter was removable. After remanding, the Court retained jurisdiction to award costs and fees under 28 U.S.C. § 1447(c). *See Mints v. Educ. Testing Serv.,* 99 F.3d 1253, 1257–58 (3d Cir. 1996). We have jurisdiction under 28 U.S.C. § 1291 to review the award.

"We review an award of attorneys' fees under section 1447(c) for abuse of discretion." *Roxbury Condo. Ass'n v. Anthony S. Cupo Agency*, 316 F.3d 224, 226 (3d Cir. 2003). "A district court abuses its discretion by basing its decision on 'a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact.'" *Id.* (quoting *LaSalle Nat'l Bank v. First Conn. Holding Grp.*, 287 F.3d 279, 288 (3d Cir. 2002)).

Pro Tempore Scarnati for the costs and fees award. He challenges other aspects of the Court's decision, contending plaintiffs were not entitled to an award at all under § 1447(c), and that the Court erred in calculating the amount owed. We first address the predicate question of plaintiffs' entitlement to a § 1447(c) award. We next turn to the most contested issue on appeal: the Court's decision to impose the award on Senator Scarnati in his personal, rather than official, capacity. Finally, we assess whether the costs and fees awarded were appropriate.

## A.

To determine whether plaintiffs are entitled to costs and fees as a result of the removal, we begin with a review of the removal provisions relevant to this case. A defendant may generally remove a civil action from state court if it is one over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In addition to establishing federal subject matter jurisdiction, a removing defendant must comply with several statutory procedural requirements. *See id.* §§ 1446, 1447. Two of those provisions are at issue here. First, removal must occur within thirty days of the defendant's "receipt . . . of the initial pleading," *id.* § 1446(b)(1), or within thirty days of the defendant's "receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," *id.* § 1446(b)(3). Second, all defendants must join in or consent to removal. *Id.* § 1446(b)(2). If the removing defendant fails to comply with these procedural requirements, "[a] motion to remand the case . . . must be made within 30 days after the filing of the notice of removal." *Id.* § 1447(c).

10

When a case is remanded to state court, the removing defendant may be liable for expenses associated with the unsuccessful removal: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* In *Martin v. Franklin Capital Corp.*, the Supreme Court announced the proper standard for awarding fees under § 1447(c): "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." 546 U.S. 132, 141 (2005). The Court adopted that standard instead of a narrower one under which fees could be awarded only if the removing party's position was "frivolous, unreasonable, or without foundation." *Id.* at 138. In holding that the test should "turn on . . . reasonableness," the Court "recognize[d] the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140–41.

Here, the District Court determined Senator Scarnati had no objectively reasonable basis for contending the removal statutory criteria were satisfied, as removal was both untimely and lacked the consent of the executive branch defendants. It awarded costs and fees on that basis.

Senator Scarnati did not remove the case within thirty days after receipt of the initial pleading, *see* 28 U.S.C. § 1446(b)(1), yet contends his action was timely for another reason. According to the Senator, the October 23, 2017 Writ of Election was an "other paper," *id.* § 1446(b)(3), that "caused

11

the state court matter to suddenly . . . pose a substantial federal question," resetting the thirty-day clock during which he could remove, Appellant's Br. 30. As the District Court described, however, our precedent establishes that the terms "an amended pleading, motion, order or other paper" in § 1446(b)(3) "only address developments within a case," not a document, such as the writ here, which is separate and apart from the case. *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 210 (3d Cir. 2014) (hereinafter *Miller*) (citation and alteration omitted); *accord* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3731 (4th ed. rev. 2018) (documents not generated within the state litigation generally are not recognized as "other papers" that can start a 30-day removal period under § 1446(b)).

Senator Scarnati does not dispute this general rule and concedes that the Writ of Election was not a development within the case, but he contends an exception to the rule is warranted. He relies primarily on *Doe v. American Red Cross*, where we held that a Supreme Court decision that unequivocally authorized the Red Cross to "remov[e] from state to federal court . . . any state-law action it is defending" qualified as an "order" under § 1446(b)(3), despite not being "paper in the case." 14 F.3d 196, 201–02 (3d Cir. 1993) (citation omitted). Senator Scarnati maintains that our recognition of an exception in *Doe* "has opened the door for potential additional exceptions," including in the "equally unique circumstances here." Appellant's Br. 31.

But in *Doe* we emphasized that we were "construing only the term 'order' as set forth in Section 1446(b)" and not "the term 'other paper.'" 14 F.3d at 202. We stressed that our decision was "extremely confined" and "narrow." *Id.*

12

Subsequently, in *Miller*, we rejected an attempt to expand *Doe* where a later issued circuit court decision involved the same defendant but "did not include the explicit authorization to remove other pending cases." 769 F.3d at 210. We underscored that the *Doe* ruling was "narrow and meant to apply in 'unique circumstances.'" *Id.* at 211 (quoting *Doe*, 14 F.3d at 202–03). The order in *Doe* "was not 'simply . . . an order emanating from an unrelated action'" but "was 'an unequivocal order directed to a party to the pending litigation, explicitly authorizing'" removal. *Id.* at 210 (quoting *Doe*, 14 F.3d at 202) (alteration in original). Our recognition of a "narrow" exception for direct orders from a higher court that expressly authorize a defendant to remove does not help Senator Scarnati here. *Doe*, 14 F.3d at 202.

Accordingly, we cannot say that the District Court abused its discretion in concluding Senator Scarnati lacked an objectively reasonable basis for contending the Writ of Election was an "other paper" under § 1446(b)(3). The writ is a procedural mechanism mandated by the federal Constitution; its issuance was external to the parties' state court litigation. Under our precedents, only a "narrow" set of developments that are not "within [the] case" may qualify as an "order" under § 1446(b)(3). *Miller*, 769 F.3d at 210. Though we reiterate that a "colorable removal claim in an area of unsettled law" does not merit a § 1447(c) award, *Roxbury Condo. Ass'n v. Anthony S. Cupo Agency*, 316 F.3d 224, 228 (3d Cir. 2003), we see no abuse of discretion here.[4]

---

[4] As noted, the District Court also held removal was improper for the additional and independent reason that Senator Scarnati failed to obtain the consent of the executive defendants. *See* 28 U.S.C. § 1446(b)(2)(A). The Court rejected

13

**B.**

Although we affirm the District Court's order awarding costs and fees under § 1447(c), we must also consider its decision to hold Senate President Pro Tempore Scarnati personally liable for the award in this official capacity suit. Neither party has cited any case that addresses whether § 1447(c) allows a court to levy costs and fees on an official-capacity defendant in his or her personal capacity.

his argument that the executive defendants were nominal parties, noting he had earlier argued that Governor Wolf was an "indispensable party" because the relief sought required the Governor's participation. *League of Women Voters of Pa.*, 2018 WL 1787211, at *4. *See generally Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 359 n.27 (3d Cir. 2013) (noting that removing defendants need not secure consent from "nominal parties"). But whether a party can be "indispensable" because of its ministerial role in effecting a judgment, but nominal for removal purposes, is an unresolved question, with courts offering indirect support to both sides. *Compare, e.g.*, *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (stating "while nominal or fraudulently joined parties may be disregarded [in considering diversity jurisdiction], indispensable parties may not"), *with Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92 (2005) (observing that parties "joined only as designated performer of a ministerial act" do not satisfy diversity requirements) (citing *Walden v. Skinner,* 101 U.S. 577, 589 (1880)). Because we conclude the District Court did not abuse its discretion when it ruled that Senator Scarnati lacked an objectively reasonable basis for thinking removal was timely, we need not resolve this question today.

14

We find instructive the Supreme Court's reasoning in a similar context. In *Kentucky v. Graham*, the Supreme Court considered "whether 42 U.S.C. § 1988"—the fee-shifting provision for federal civil rights suits—"allows attorney's fees to be recovered from a governmental entity when a plaintiff sues governmental employees only in their personal capacities." 473 U.S. 159, 161 (1985). The Court recognized that § 1988—like § 1447(c)—"does not in so many words define the parties who must bear" a costs and fees award. *Id.* at 164. Nonetheless, the Court found it "clear" that the "losing party" bears cost and fee liability. *Id.* It explained that "[p]roper application of this principle" in actions involving public officials "requires careful adherence to the distinction between personal- and official-capacity action suits." *Id.* at 165. An official-capacity suit is "to be treated as a suit against the entity [of which the office is an agent]" and "is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (citation omitted). Because of this distinction, "a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity," *id.* at 167, which "is not even a party to a personal-capacity lawsuit," *id.* at 168. An officer in his personal capacity is a different entity than that same officer in his official capacity, and the officer is only party to a suit in the capacity he is named. "That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty." *Id.*; *see also Hutto v. Finney*, 437 U.S. 678, 699 n.32 (1978) (observing that to require an officer to pay a fee award in an individual capacity is "manifestly unfair when . . . the individual officers have no personal interest in the conduct of the State's litigation").

15

We apply the same principles here. Section 1447(c) does not expressly state who may be required to pay costs and fees. But like the Court in *Graham*, we recognize that it applies only to "losing part[ies]"—in removal cases, the defendant that improperly removed the case. 473 U.S. at 164; *cf. Martin*, 546 U.S. at 141 ("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."). It is undisputed that Senator Scarnati was named a defendant in his official capacity only, as the President Pro Tempore of the State Senate. Accordingly, this "is *not* a suit against [him] personally, for the real party in interest is the entity" he represents. *Graham*, 473 U.S. at 166; *cf. Karcher v. May*, 484 U.S. 72, 78 (1987) ("We have repeatedly recognized that the real party in interest in an official-capacity suit is the entity represented and not the individual officeholder."). Because this is an "an official-capacity action," plaintiffs are "entitled to look for relief, both on the merits and for fees, to the governmental entity" only. *Graham*, 473 U.S. at 171. Senator Scarnati in his personal capacity—a nonparty to this action—cannot be made to pay.

Plaintiffs offer two arguments for why personal liability is still appropriate, but neither is convincing. First, they rely on the law of qualified immunity to contend Senator Scarnati's "objectively unreasonable conduct in this case merited the imposition of personal liability." Appellee's Br. 45. This argument fails because the qualified immunity doctrine applies when an official is sued in his or her personal capacity—the official is personally made a party to the suit. *See Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990) ("[Q]ualified immunity . . . [is] a defense available only for governmental officials when they are sued in their personal, and not in their official, capacity."). Here, Senator Scarnati was sued in his

16

official capacity only, and *Graham* counsels adherence to the distinction between personal and official capacity actions. Senator Scarnati is personally not a party to the suit, so a § 1447(c) award cannot be made against him in his personal capacity.[5]

Plaintiffs also suggest fees can be awarded against Senator Scarnati personally because he acted in bad faith. But the District Court had the opportunity to make a bad faith finding and explicitly did "not come to any conclusion that improper motive or bad faith [was] involved." *League of Women Voters of Pa.*, 2018 WL 1787211, at *6. Fee-shifting on this basis is not warranted.

In sum, the District Court erred in awarding fees against Senator Scarnati in his personal capacity. Named in the suit in his official capacity as President Pro Tempore of the State Senate, he was personally not a party in this action, and the Court has no power under § 1447(c) to sanction a nonparty. Because it neither found bad faith nor invoked any other source of authority to impose sanctions on Senator Scarnati in his personal capacity, we will not consider on appeal whether such sanctions would be appropriate. *Cf. Chambers v. NASCO, Inc.*,

---

[5] In addition, plaintiffs' analogy fails because the standard for imposing fees under § 1447(c) is not coextensive with the standard for defeating qualified immunity. An official is not entitled to qualified immunity if the official violates a "clearly established" right; § 1447(c) fees are available if there is no "objectively reasonable" basis for removal. As we have explained, § 1447(c) does not require a showing that the removal was "frivolous, unreasonable, or without foundation." *Martin*, 546 U.S. at 138.

17

501 U.S. 32, 40 n.5 (1991); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994). Accordingly, we will reverse the part of the Court's order directing Senator Scarnati to personally pay to plaintiffs the costs and fees award, and remand for further proceedings.

## C.

Finally, we turn to Senator Scarnati's remaining argument that the Court erred in calculating the award. As noted, plaintiffs sought $49,616.50 in attorneys' fees and $3,120.02 in costs incurred in the emergency response to Senator Scarnati's removal and in preparing the subsequent § 1447(c) fees and costs motion. The District Court did not abuse its discretion in awarding $26,240 in fees and $3,120.02 in costs.

In calculating the fee award, the Court properly applied the lodestar method, multiplying a reasonable hourly billing rate for the lawyers' services by the reasonable number of hours expended on the litigation. *See In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). As to billing rate, it agreed with Senator Scarnati that counsel from Arnold & Porter Kaye Scholer should not be reimbursed at the higher Washington, D.C. rates, and instead looked to "customary Philadelphia legal fees." *League of Women Voters of Pa.*, 2018 WL 1787211, at *6; *accord Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 699 (3d Cir. 2005). We discern no error in the District Court's application of a blended hourly rate of $400—a median rate for the Philadelphia-based Public Interest Law Center lawyers—which Senator Scarnati acknowledges is a "fair reflection of the prevailing market rates." Appellant's Br. 38; *accord In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306

(3d Cir. 2005) ("[D]istrict courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter.").

With respect to the time billed, the notice of removal presented plaintiffs with an emergency situation and a range of complex legal issues to address in a short period of time. Consistent with the Pennsylvania Supreme Court's recognition of the import of the state court litigation, plaintiffs did not respond inappropriately. The District Court's decision to award fees less a reduction to account for overlap was proper in these circumstances. *Accord Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) (observing that fee request reductions require "flexibility," as "the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience").

Likewise, the District Court did not abuse its discretion in awarding $2,185 in costs incurred by Arnold & Porter Kaye Scholer for Westlaw legal research. *Cf. Wehr v. Burroughs Corp.*, 619 F.2d 276, 285 (3d Cir. 1980) (awarding research fees and noting that "[u]se of computer-aided legal research . . . is certainly reasonable, if not essential, in contemporary legal practice"). It properly reviewed the supporting documentation submitted by plaintiffs and explained why it determined the costs sought for research were reasonable.

Accordingly, we will affirm the costs and fees awarded.

### III.

In sum, we conclude the District Court did not abuse its

discretion in determining plaintiffs were entitled to a costs and fees award under § 1447(c) or in calculating the proper award. But because it erred in imposing fees on Senator Scarnati in his personal capacity, we will reverse that part of the order and remand for further proceedings.