OPINION OF THE COURT
 

 Smith, J.
 

 The issue in this case, upon a certified question to this Court from the United States Court of Appeals for the Second Circuit, is whether the term " 'population’ ”, defined by Municipal Home Rule Law § 10 (1) (ii) (a) (13) (c) as " 'residents, citizens, or registered voters’, * * * necessarily excludes transients, such as military personnel, incarcerated felons, and occupants of group homes.” (995 F2d 12, 14.) Because we hold that the Municipal Home Rule Law definition does not "necessarily exclude” the stated classes of persons, we answer the certified question in the negative.
 

 Defendant Board of Supervisors of Jefferson County (the Board) is made up of supervisors elected in each of the County’s constituent towns and in each ward of the City of Watertown. In 1968, in response to decisions of the United States Supreme Court and this Court declaring that the equal protection of the laws required legislative bodies to be substantially equal in population
 
 (see, Reynolds v Sims,
 
 377 US 533;
 
 Avery v Midland County,
 
 390 US 474;
 
 Iannucci v Board of Supervisors,
 
 20 NY2d 244), Jefferson County modified the structure of the Board to provide a weighted voting system of representation based upon the population of each town or ward. Thereafter, the County modified the composition of the Board to reflect the population of the County as reported in the censuses of 1970 and 1980. The apportionment base used on each occasion was total population, as set forth in the census pursuant to title 13 of the United States Code. This population included, among others, military personnel, inhabitants of group homes, and incarcerated felons.
 

 After the results of the 1990 census became available, the Board proposed, by Local Law Intro No. 1 of 1992, an adjusted weighted voting plan, using the gross census figures for the population of the County as an apportionment base. The 1990 census figures, however, also included prisoners, group home residents, and military personnel and their dependents who, it is argued, are not residents because they are not domiciliaries —i.e., they have not explicitly expressed a desire to remain
 
 *20
 
 permanently. Plaintiffs refer to these classes of individuals as nonresidents for purposes of this action.
 

 Plaintiffs, members of the Board and one Jefferson County resident who is not an elected official, by order to show cause, commenced this class action in the Federal District Court for the Northern District of New York, on behalf of themselves and several towns and wards located in Jefferson County. Plaintiffs asserted that as a result of changes in the population of Jefferson County, reflected in the 1990 Federal census, the voting composition of the Board violates the equal protection and due process rights of the residents of Jefferson County and does not provide substantially equal weight for all the voters of that County. Particularly disturbing to plaintiffs was the inclusion of the nonresidents of Jefferson County. Plaintiffs argued that to meet their duty to protect the constitutional and statutory rights of plaintiffs, defendants are obligated to reapportion the Board based on the resident population of Jefferson County and, in doing so, to investigate the extent to which nonresidents of the County are included in the 1990 raw census figures and to delete them from the figures.
 

 In an oral decision from the bench, the District Court granted defendants’ motion for summary judgment and dismissed the complaint. Plaintiffs appealed to the United States Court of Appeals for the Second Circuit and that court certified the following question to this Court:
 

 "Whether, for purposes of local legislative apportionment, 'population,’ defined as 'residents, citizens, or registered voters,’ N.Y. Mun. Home Rule Law § 10 (1) (ii) (a) (13) (c) (McKinney 1993), necessarily excludes transients, such as military personnel, incarcerated felons, and occupants of group homes.” (995 F2d 12, 14,
 
 supra.)
 

 We accepted the question pursuant to section 500.17 of the Rules of the Court of Appeals
 
 (see,
 
 22 NYCRR 500.17).
 

 Here, plaintiffs argue that local legislative reapportionment requires modification of the population base to exclude persons who are not domiciliaries or citizens of the jurisdiction. Defendants contend that the legislative history of the Municipal Home Rule Law demonstrates that the Legislature authorized use of the total population as an apportionment base and that sound policy reasons support defendants’ construction of the Municipal Home Rule Law.
 

 
 *21
 
 I
 

 Municipal Home Rule Law § 10 (1) (ii) (a) (13) (c) states, in part, "As used in this subparagraph the term 'population’ shall mean residents, citizens, or registered voters.” The supporting bill to this 1969 amendment to the statute was drafted in response to the then newly stated requirement of "one man, one vote”
 
 (see, Reynolds v Sims,
 
 377 US 533,
 
 supra)
 
 which this Court held applicable to local "elective legislative bodies exercising general governmental powers”
 
 (Seaman v Fedourich,
 
 16 NY2d 94, 101). Local governments, struggling to meet the new mandate, found themselves in "turmoil” given the lack of specificity of the parameters of "one man, one vote” or any specific instructions on how to apply the doctrine
 
 (see,
 
 1969 NY Legis Ann, at 242). In an attempt to remedy this situation, this amendment to the statute was added, providing "[m]aximum flexibility * * * to local governments to fashion plans which meet both the needs of their communities and the desires of the majority of their electorates”
 
 (id.).
 
 Similarly, the United States Supreme Court recognized "the immense pressures facing units of local government, and * * * the greatly varying problems with which they must deal” and indicated that "[t]he Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems”
 
 (Avery v Midland County,
 
 390 US 474, 485,
 
 supra).
 
 Thus, the Municipal Home Rule Law embodies the sentiment of the Supreme Court that flexibility is key to allowing the local governments to function effectively in meeting the needs of apportionment. This sentiment is starkly contrasted by the position plaintiffs urge us to adopt, that section 10 (1) (ii) (a) (13) (c) of the Municipal Home Rule Law must be read as necessarily excluding transients.
 

 Specifically, regarding the issue of transients, the Supreme Court has stated:
 

 "Neither in
 
 Reynolds
 
 v.
 
 Sims
 
 nor in any other decision has this Court suggested that the States are required to include aliens, transients, short-term or temporary residents, or persons denied the vote for conviction of crime, in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured. The decision to include or exclude any such group involves choices
 
 *22
 
 about the nature of representation with which we have been shown no constitutionally founded reason to interfere. Unless a choice is one the Constitution forbids * * * the resulting apportionment base offends no constitutional bar, and compliance with the rule established in
 
 Reynolds
 
 v.
 
 Sims
 
 is to be measured thereby”
 
 (Burns v Richardson,
 
 384 US 73, 92).
 

 A "choice the Constitution forbids” is illustrated by
 
 Carrington v Rash
 
 (380 US 89) where the Supreme Court held that Texas’ absolute prohibition against military personnel exercising their right to vote in "any election in that State” while enlisted in the armed forces was violative of the 14th Amendment’s Equal Protection Clause. That decision illustrates that the exclusion of transients from a voting base will be carefully scrutinized and thus must be articulated carefully. The
 
 Carrington
 
 decision noted that States "may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State”
 
 (id.,
 
 at 96). It is unquestioned that the States are granted considerable deference in determining the parameters of an apportionment population, and if a "necessary exclusion” is to be made, it should be made explicitly and well supported with reasons by the Legislature. The theme of flexibility is not tempered with a propensity toward the exclusion of transients. If anything, the tendency to include such classes of persons for apportionment purposes appears to be the preference.
 

 II
 

 New York’s legislative districts as well as its congressional seats are both apportioned based on the number "of inhabitants of the state”
 
 (see,
 
 State Law §§ 120, 123, 111; L 1983, ch 1003, § 3;
 
 see also,
 
 NY Const, art III, §§ 3, 4, 5). There is no indication that the Legislature intended that municipalities be denied the same base as allowed the State districts. Had the Legislature intended to so restrict municipalities, it would have made that restriction explicit. Otherwise, we are not compelled to differentiate between State and local legislative bodies for purposes of the appropriate apportionment base.
 

 Notwithstanding plaintiffs’ position, these transients are also integral parts of their respective communities. Military persons, children, mental patients and prisoners all affect the social and economic character of their environments. Their
 
 *23
 
 impact results in employment opportunities and contributes to the tax base. They also use services provided by the municipalities. Thus, their inclusion for apportionment purposes makes sense on several levels.
 

 Plaintiffs urge also that the term "resident” should be restricted to a person’s domicile for apportionment purposes. That construction of the term would serve only to lend more confusion to the issue given the inherent difficulty in distinguishing between inhabitants and domiciliaries.
 

 We also agree with defendants that if plaintiffs’ position is adopted, municipal reapportionment of most of the entire State would be required. We are reluctant to construe the Municipal Home Rule Law to facilitate that result absent clear indication from the Legislature that such construction would be appropriate.
 

 Ill
 

 Plaintiffs’ contention that cases arising prior to the enactment of Municipal Home Rule Law § 10 (1) (ii) (a) (13) (c) support their position that the population base must be adjusted to exclude persons who are not domiciliaries or citizens of the County is unavailing. That the cases were decided before the statute was enacted gives us pause in the first instance because we are bound to rule consistently with what we find is the will of the Legislature. Specifically, plaintiffs argue that our decision in
 
 Seaman v Fedourich
 
 (16 NY2d 94,
 
 supra)
 
 supports their position. We disagree. In that case, we held that excluding patients at the State hospital from the districting plan without investigating relevant factors — "such as, for instance, where they had previously lived and where they had voted in the past — is arbitrary and discriminatory”
 
 (id.,
 
 at 105). This holding supports the policy of inclusion absent specific reasons for exclusion.
 

 To the extent that
 
 Davis v Board of Supervisors
 
 (28 AD2d 583) suggests that mental patients must be excluded absent a showing concerning their residence, we disagree with its reading of
 
 Seaman. Davis
 
 comes close to mandating an affirmative duty for legislative bodies to show why specific transients are included. We do not find such a requirement in cases from the Supreme Court, this Court, any statute or any other authority.
 

 Plaintiffs rely upon
 
 Greenwald v Board of Supervisors
 
 (567 F Supp 200,
 
 affd
 
 742 F2d 1434) where the United States District Court for the Southern District of New York held,
 
 *24
 

 inter alla,
 
 that absent a showing of intent to reside in the county, the inclusion in the weighted voting plan of students and other individuals living in group homes who had not explicitly indicated their intent to become residents was error. That court concluded:
 

 "[Residence for local apportionment purposes, as with voting rights, requires both presence and an intent to remain. Consistent with the definition of residence for voting rights purposes, mere presence in Sullivan County does not imply an intent to remain as to those groups described in Article II, section 4, of the New York Constitution”
 
 (id.,
 
 at 208).
 

 Article II, §4 of the New York Constitution provides that certain persons who are temporarily present or away do not gain or lose residence. It states:
 

 "For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse, or other asylum, or institution wholly or partially supported at public expense or by charity; nor while confined in any public prison.”
 

 As this section of the Constitution indicates, however, it applies "[f]or the purpose of voting.” Unquestionably, different standards are involved when comparing an individual’s actual right to vote to actions the Legislature may take to facilitate apportionment. While it is virtually inconceivable that, for voting purposes, a court would question the principle that any citizen’s vote must be equal to that of any other citizen
 
 (see, Gray v Sanders,
 
 372 US 368, 379-380), apportionment itself involves the application of different standards. In
 
 Reynolds v Sims,
 
 the Supreme Court stated, "We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement” (377 US 533, 577,
 
 supra; see also, Franklin v Krause,
 
 32 NY2d 234, 238,
 
 appeal dismissed
 
 415 US 904). Contrary to the District Court’s decision in
 
 *25
 

 Greenwald,
 
 there is no requirement in New York’s Constitution or the Municipal Home Rule Law that obligates a local legislature, in the context of apportionment, to use the same standards required for voting purposes, specifically, presence and an intent to remain. Additionally, we agree with defendants that even though certain citizens within a given population may not have the right to vote, a 12-year-old child for example, that citizen nevertheless would properly be part of the population base for apportionment purposes. That residence in the apportionment sense be construed more broadly than in terms of voting rights is appropriate. The goals and objectives of the concepts differ significantly.
 

 Given the restricted nature of the question certified to us from the United States Court of Appeals for the Second Circuit, we do not address plaintiffs’ contention that defendants’ apportionment plan is unconstitutional on its face.
 

 Accordingly, the certified question should be answered in the negative.
 

 Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., Bellacosa and Levine concur.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and records submitted, certified question answered in the negative.