12 F.3d 377
 88 Ed. Law Rep. 58
 George K. ARTHUR; Norman Goldfarb; William Seales;
Wilhelmina P. Seales; John Medige; Citizens Council for
Human Relations, Inc.; National Association for the
Advancement of Colored People, Inc., Buffalo Branch,
Plaintiffs-Appellees,
Community Advisory Board of Bilingual Education of Buffalo;
Lourdes Agosto, individually and on behalf of her minor
children, Samuel Jose & Pable Agosto, Jr.; John Bushey and
Sally Andres, on behalf of all the handicapped students of
the City of Buffalo; Buffalo Teachers Federation,
Plaintiffs-Intervenors,
v.
Joseph MANCH, individually and as Superintendent of Schools
of the City of Buffalo; Buffalo Municipal Civil Service
Commission; W. Slominski; Delmar L. Mitchell; William J.
Dauria; Joseph S. Forma; Michael McCarthy; William B.
Hoyt; George K. Arthur; Richard F. Okoniewski; Horace C.
Johnson; John A. Rammunno; Anthony M. Massiello; Daniel
J. Higgins; William A. Price, constituting the members of
the Common Council of the City of Buffalo; the Board of
Education of the City of Buffalo; Samuel E. Sacco; Joseph
E. Murphy; Matt A. Gajewski, Dr.; Louis C. Benton;
Michael J. Ryan; Joseph D. Hillery; Marilyn Kavanagh;
Anthony Luppino; Judith P. Fisher; James W. Comerford;
David E. Kelly; John P. Doyle; Florence Johnson; Mozella
Richardson; Marlies Wesolowski, individually and as members
of the Board of Education of the City of Buffalo, Defendants,
and
The Board of Education of the City of Buffalo, Defendant-Appellee,
James D. Griffin, Mayor of the City of Buffalo, Defendant-Appellant.
 No. 148, Docket 93-7199.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 30, 1993.
Decided Dec. 22, 1993.
 
 Kenneth R. Kirby, O'Shea, Reynolds, Napier, Quinn & Cummings, Buffalo, NY (John H. Napier, O'Shea, Reynolds, Napier, Quinn & Cummings, of counsel), for defendant-appellant Mayor James D. Griffin.
 David Gerald Jay, Buffalo, NY, for plaintiffs-appellees.
 J. Edmund De Castro, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for plaintiffs-intervenors Community Advisory Bd. for Bilingual Educ. of Buffalo; Lourdes Agosto, individually and on behalf of her minor children, Samuel Jose & Pable Agosto, Jr.
 Bruce A. Goldstein, Bouvier, O'Connor, Buffalo, NY, for plaintiffs-intervenors John Bushey and Sally Andres, on behalf of all handicapped students of the City of Buffalo.
 Robert W. Klingensmith, Buffalo, NY, for plaintiff-intervenor Buffalo Teachers Federation.
 David J. Mahoney, Offermann, Mahoney, Cassano, Pigott, Greco & Whalen, Buffalo, NY (Gerald James Whalen, Offermann, Mahoney, Cassano, Pigott, Greco & Whalen, Buffalo, NY; Aubrey V. McCutcheon, Jr., Ypsilanti, MI, of counsel), for defendant-appellee The Bd. of Educ. of the City of Buffalo, et al.
 Before: FEINBERG, CARDAMONE, and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Defendant-appellant James D. Griffin, Mayor of the City of Buffalo (the "Mayor"), appeals from an order of the United States District Court for the Western District of New York (Curtin, J.), mandating the defendant-appellee Board of Education of the City of Buffalo (the "Board") to restore eighty-three teacher aide positions to certain magnet schools created pursuant to a school desegregation plan. The Board had transferred teacher aides from the magnet schools to neighborhood schools because of budgetary problems. Plaintiffs, various groups representing the interests of students in the Buffalo Public School System ("BPSS"), had moved for an order to show cause as to why the aides should not be reinstated. After two hearings on the issue, in an order dated February 2, 1993, the district court directed the Board to reinstate the aides for the "upcoming semester," ending in June, 1993. In compliance with the order, the Board restored the positions. Because the applicable dates of the district court injunction have passed, and the funds have already been expended, we dismiss the Mayor's appeal as moot.
 
 BACKGROUND
 
 2
 In 1976, the United States District Court for the Western District of New York (Curtin, J.) found the Board, the Superintendent of Schools of the City of Buffalo (the "Superintendent"), the Common Council of the City of Buffalo (the "Council"), the Commissioner of Education of the State of New York, and the Board of Regents of the State of New York responsible for the existence of a segregated school system in BPSS. See Arthur v. Nyquist, 415 F.Supp. 904 (W.D.N.Y.1976). This Court affirmed liability only as to the Board, the Superintendent, and the Council. See Arthur v. Nyquist, 573 F.2d 134, 143-46 (2d Cir.), cert. denied, 439 U.S. 860, 99 S.Ct. 179, 58 L.Ed.2d 169 (1978).
 
 
 3
 After the liability determination, the district court and the Board began establishing plans to remedy the segregation. This case deals with "Phase III" and "Phase IIIx" of the remedy plans, which deal with the institution of magnet schools as a method to achieve integration. Phase III, initially a voluntary plan, was changed to an involuntary plan and dubbed IIIx. See Arthur v. Nyquist, 514 F.Supp. 1133, 1134-37 (W.D.N.Y.1981). Phase IIIx also expanded the scope of the remedy to include teacher aides who would be present in certain magnet schools entitled Early Childhood Centers ("ECCs") to render assistance in education matters, to provide individualized and immediate reinforcement of instruction, and to ensure constant adult supervision.
 
 
 4
 Over the course of the execution of the remedy plans, numerous budget disputes have arisen between the Board and the Mayor over the funding of the various plans. On occasion, the Board has sought orders from the district court directing the Mayor and the Council to provide additional funds for implementation of the desegregation plans. See Arthur v. Nyquist, 547 F.Supp. 468, 478 (W.D.N.Y.1982) (granting Board's application for more funds), aff'd, 712 F.2d 809 (2d Cir.1983), cert. denied, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); Arthur v. Nyquist, 716 F.Supp. 1484, 1489 (W.D.N.Y.1989) (denying Board's application for additional funding).
 
 
 5
 After receiving its educational funding allocation for the 1992-93 school year, the Board reassigned teacher aides from the ECCs to neighborhood schools. The Board claimed that the cuts were necessitated by a decrease in its funding. In response to the reassignment of the aides, plaintiffs, citing the staffing requirements of Phase IIIx, brought an order to show cause seeking restoration of the ECC teacher aide positions.
 
 
 6
 In a hearing held by the court on plaintiffs' motion, plaintiffs advised the court that they had six witnesses prepared to testify about the importance of the teacher aides to the ECC program, and about the importance of the ECC program to the desegregation plan. The district court was satisfied with a summary of the proposed testimony. The Board submitted an offer of proof which established that the lack of funding was the sole reason that the teacher aides were reduced.
 
 
 7
 During the hearing, Judge Curtin repeatedly noted that he was not ruling on the issue of the funding for the reinstatement of the aides. He explained that at present he was only concerned with whether the transfer of the aides would have a detrimental effect on the desegregation plan. Funding, he stated, would be discussed if, and when, there was an application for more money.
 
 
 8
 In a preliminary order dated January 12, 1993, Judge Curtin granted plaintiffs' application for the order restoring the teacher aide positions, and established a panel to help determine the extent of the final order. The panel consisted of the retired associate superintendent of schools of the Buffalo City School District, a representative of the plaintiffs, and a representative of the Mayor.
 
 
 9
 Subsequent to another hearing held on January 25, 1993, in a final order dated February 2, 1993, Judge Curtin granted the plaintiffs' request and directed the Board to restore the teacher aides to the ECC program. Specifically, Judge Curtin "ordered that the Board of Education shall, for the upcoming semester, restore 83 teacher aides to the Early Childhood Centers."
 
 
 10
 Responding to concerns raised by the Board about the possible budget deficit that might result from the reinstatement of the aides, the district court added the following clause:
 
 
 11
 The Board is ordered to implement and conform to the direction contained in this order, regardless of whether a variance from, or violation of, state statute or regulation results from such transfer of aides.
 
 
 12
 At oral argument on appeal, the Board's attorney explained that he asked for this section to prevent a violation of New York State Education law precluding the Board from taking any action that would cause it to exceed its budget. See N.Y.Educ.Law Sec. 2576(7) (McKinney 1981) ("A board of education shall not incur a liability or an expense chargeable against the funds under its control or the city for any purpose in excess of the amount appropriated or available therefor or otherwise authorized by law.").
 
 
 13
 The order also contained a clause directing "the City defendants and Board ... to explore and review funding sources ... to avoid any potential budget deficit."
 
 
 14
 The Mayor now appeals the district court's order restoring the teacher aides positions. Plaintiffs have moved to dismiss the appeal or to have the order summarily affirmed.
 
 DISCUSSION
 
 15
 Before we can reach the merits of the Mayor's claims, we must first examine plaintiffs' contentions that this appeal is moot. Plaintiffs essentially claim that the Mayor's challenge to the order restoring teacher aides for the school semester that ended in June, 1993, which order has been complied with, is mooted by the passage of time, and by the Mayor's failure to seek a stay of the order or an expedited appeal. For the reasons discussed below, we agree and dismiss the appeal as moot.
 
 
 16
 Our jurisdiction is limited to those cases that present "live" controversies. See New York City Employees' Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir.1992). When the issues are no longer live, the case becomes moot and we are duty bound to dismiss the appeal. See In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993) (citing Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78, 110 S.Ct. 1249, 1253-54, 108 L.Ed.2d 400 (1990)). Even if a case were live at the outset, events occurring during the pendency of the appeal may render the case moot on appeal. See id. We find such to be the case with the Mayor's appeal. Because we find that the Mayor's appeal from the February 2, 1993 order is moot, we need not address the issue of whether the Mayor ever had standing to appeal the order.
 
 
 17
 The Mayor's appeal is moot because it came to be heard on August 30, 1993, after the semester to which the order applied had passed, and after the aides had been reinstated, paid, and had completed their work. Accordingly, our review of the order at this time would serve no purpose; "[t]he injunction no longer controls the future activities of the parties and the consequences of the ... [order] cannot be undone." New York City Employees' Retirement Sys., 969 F.2d at 1434 (finding appeal of order requiring company to include shareholder's proposal in proxy materials sent to shareholders before annual meeting moot, where company complied with order and failed to seek stay of order). See also In re Chateaugay, 988 F.2d at 326-27 (finding appeal of bankruptcy court order authorizing subsidiary to make certain payments moot, where failure of party to request stay pending appeal resulted in funds being disbursed). Had the Mayor moved for a stay of the district court's order pending appeal, or an expedited appeal, the outcome of his appeal may have been different.
 
 
 18
 The Mayor claims that the mootness doctrine does not apply because the order has continuing effects. First, he claims that despite the limited date of the order, the Board is treating the teacher aides as "sacrosanct" in determining the budget for the 1993-94 school year. This reasoning does not save the Mayor's appeal from mootness; it does not change the fact that on its face the order refers only to the semester ending in June, 1993. Rather, this argument appears to be nothing more than a challenge to the Board's application of the district court's order, an issue that the Mayor would have been better off bringing to the attention of the district court.
 
 
 19
 Next, the Mayor claims that the appeal is not moot because the order has continuing financial ramifications. Specifically, he claims that the section absolving the Board from state law will affect the manner in which the accounting for any deficit takes place. Because the order allows the Board to spend beyond its budget, the Mayor claims that the City will be forced to pay the deficit. We reject this reasoning because we find that the Mayor has failed to show that the order directly results in the City's having to pay any Board deficit.
 
 
 20
 First, it has yet to be determined whether the Board will actually incur a deficit for the 1992-93 school year. Second, in any event, all the order provides is that the Board is allowed to spend beyond its budget. The order makes no mention of who will be responsible for the funding of the restoration of the positions. Accordingly, even assuming that the reinstatement does lead to a deficit budget for the Board, the order does not mandate that the Mayor make up for the Board's shortfall.
 
 
 21
 Furthermore, Judge Curtin repeatedly made it very clear that he was not deciding the issue of funding. As he noted in hearings held on January 11, 1993, and on January 25, 1993, any determination regarding funding responsibilities will be made if, and when, the Board brings a motion for funding in excess of its budget. Accordingly, we reject the Mayor's contentions.
 
 CONCLUSION
 
 22
 Based on the foregoing we dismiss the appeal as moot. Because the mootness of the appeal was a direct result of the Mayor's inaction rather than of happenstance, we do not vacate the judgment below. See Manufacturers Hanover Trust Co. v. Yanakas, 11 F.3d 381, 383 (2d Cir.1993) ("[T]he appellate court should not vacate the judgment below if the case has become moot due to the voluntary act of the losing party.").