Lawrence C. LONGWAY, Individually and as Supervisor of the Town of Pamelia; John C. Kiechle, Individually and as Supervisor of the Town of Philadelphia; Town of Philadelphia; James D. St. Croix, Individually and as Supervisor of the 10th Ward of the City of Watertown; Bruce Dempster, Individually and as Supervisor of the 11th Ward of the City of Watertown; Ralph A. Green, Individually and as Supervisor of the Town of Watertown; Fairman S. Sutton, Individually and as Supervisor of the Town of Alexandria; James E. Golden, Individually and as Supervisor of the Town of Lyme; Neil F. Parks, Individually and as Supervisor of the Town of Rutland, and Daniel T. Jenkins, Plaintiffs–Appellants,

v.

JEFFERSON COUNTY BOARD OF SUPERVISORS and Jefferson County, New York, Defendants–Appellees.

No. 1438, Docket 93–7005.

United States Court of Appeals, Second Circuit.

Argued May 3, 1993.

Certified to New York Court of Appeals June 3, 1993.

Submitted on Supplemental Briefs After Response of New York Court of Appeals Dec. 16, 1993.

Decided May 12, 1994.

William C. Rosen, Monticello, NY (Rosen & Rosen, of counsel), for appellants.

James R. Griffith, Utica, NY (Felt, Hubbard & Bogan, of counsel), for appellees.

Before: MESKILL and WALKER, Circuit Judges, and MOTLEY,* District Judge.

MESKILL, Circuit Judge:

This case returns to us after our certification of a question of New York law to the New York Court of Appeals. The certification order sets forth the relevant background of this dispute, *Longway v. Jefferson County Bd. of Supervisors,* 995 F.2d 12 (2d Cir.1993), and we therefore summarize that background only briefly. The plaintiffs, certain residents and members of the Board of Supervisors of Jefferson County, New York (collectively "plaintiffs"), filed a complaint in the United States District Court for the Northern District of New York pursuant to 42 U.S.C. § 1983 and state law, challenging a plan for local legislative reapportionment proposed by the defendants, the Jefferson County Board of Supervisors and the County itself (collectively "defendants"). The plaintiffs primarily alleged that (1) the use of a total census population figure, which includes such transient groups as military personnel and incarcerated felons, as the population base in the defendants' proposed plan, Local Law Intro. No. 1, violated the Equal Protection Clause of the Fourteenth Amendment and section 10 of the New York Municipal Home Rule Law, and (2) the use of a three-quarters weighted vote distribution system, by which voting power is weighted for any measure requiring seventy-five percent of the vote for passage, violated the Equal Protection Clause. The district court, McAvoy, *C.J.,* granted sum-

mary judgment in favor of the defendants and dismissed the plaintiffs' claims.

On appeal, the plaintiffs asserted the same claims. After oral argument, we certified to the New York Court of Appeals the question whether the use of the total census population figure in Local Law Intro. No. 1 violated section 10 of the New York Municipal Home Rule Law. 995 F.2d at 14. The New York Court of Appeals determined that, for purposes of local legislative reapportionment, the use of a total population figure, without exclusion of certain transient groups, does not violate that provision of state law. *See Longway v. Jefferson County Bd. of Supervisors,* 83 N.Y.2d 17, 628 N.E.2d 1316, 607 N.Y.S.2d 606 (1993).

During the pendency of this matter before the New York court, the voters of Jefferson County rejected Local Law Intro. No. 1 in a referendum, thereby leaving no proposed reapportionment plan pending. As the plaintiffs note in their letter brief filed with this Court after the state court's decision, the rejection of Local Law Intro. No. 1 "left the defendant[s] ... without a plan of any kind under consideration."

We must now address what issues remain in this appeal. In the defendants' letter brief filed in this Court after the New York Court of Appeals' decision, they assert that the issue of the constitutionality of the three-quarters weighted vote distribution system is moot because of the referendum defeat of Local Law Intro. No. 1. The defendants maintain, however, that the constitutionality of the total population base is still a viable issue because virtually any scheme of reapportionment that the defendants might propose in the future would utilize a total census population figure; the defendants thus seek affirmance of the district court's decision with respect to the population base issue. The plaintiffs contend, on the other hand,

---

* Honorable Constance Baker Motley, United States District Judge for the Southern District of New York, sitting by designation.

that both issues are live and seek reversal of the district court's grant of summary judgment to the defendants. Additionally, the plaintiffs request that we order the district court to supervise implementation of a valid reapportionment plan.

## I. *Justiciability*

■ Pursuant to Article III of the Constitution, we only have jurisdiction over live cases or controversies. *See Arthur v. Manch*, 12 F.3d 377, 380 (2d Cir.1993); *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir.1993). If events occur during the pendency of an appeal that render the case moot, we must dismiss the appeal rather than issue an advisory opinion. *See Arthur*, 12 F.3d at 380; *see also Town of Deerfield, New York v. FCC*, 992 F.2d 420, 427–28 (2d Cir.1993).

■ In our view, neither the constitutionality of the total census population figure nor the constitutionality of the three-quarters weighted vote distribution system is a justiciable issue at this juncture. Both of these issues arose out of the defendants' proposal of Local Law Intro. No. 1, which is no longer pending in light of its defeat in the referendum. Our consideration of the constitutionality of the total population base and the three-quarters weighted vote system would, therefore, lead to the issuance of an advisory opinion. Accordingly, these issues are moot.

The parties argue, however, that the issue of the constitutionality of the population base nonetheless remains ripe for our consideration because any future reapportionment plan will utilize a total census population figure. The plaintiffs and the defendants state that the defendants *must* adopt some reapportionment plan, and they contend that this Court could properly provide guidance as to whether the reapportionment plan that is inevitably adopted may use the total census figure as its population base. We disagree.

■ An issue is ripe for judicial resolution only if it presents " ' "a real, substantial controversy," not a mere hypothetical question.' " *AMSAT Cable Ltd. v. Cablevision of Connecticut*, 6 F.3d 867, 872 (2d Cir.1993) (quoting 13A Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 3532.2, at 137 (2d ed. 1984)). Pursuant to ripeness doctrine, we must avoid " 'entangling [our]selves in abstract disagreements' " and engaging in " 'premature adjudication.' " *In re Drexel Burnham Lambert Group*, 995 F.2d 1138, 1146 (2d Cir.1993) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

■ In this case, it is possible that the defendants will propose and adopt a reapportionment plan that does not use the total census population figure, and instead excludes some transients that the plaintiffs wish to have excluded. Indeed, according to the plaintiffs' submissions to this Court, the supervisor from the town of LeRay, Ronald C. Taylor, is developing a reapportionment proposal that would exclude all prisoners from the population base. Accordingly, we are not persuaded that the use of a total population figure is so certain that the question of its constitutionality presents a ripe issue.

Our conclusion is not inconsistent with the district court's analysis of whether the issues before it were ripe at that time. The district court initially held, and we agreed, *see* 995 F.2d at 13, that the issues of the constitutionality of the population base and three-quarters weighted vote system were ripe even though the defendants had merely put forth a proposal, but had not yet obtained approval of that proposal. The district court stated that "the legislative body here has already decided to use the challenged data to formulate its plan for reapportionment, and there is no evidence before me to indicate that this data will not be used." By contrast, at this stage of the litigation, the Court no longer has any firm indication that the defendants will propose a reapportionment plan that utilizes the total census figure as its population base. The situation has, therefore, changed dramatically since the case was before the district court and the issues were ripe.

■ Finally, we note that the question whether using the total population figure as

the population base for reapportionment violates section 10 of the Municipal Home Rule Law is also not justiciable. There being no pending proposal utilizing the total population figure, resolution of that state law issue would constitute a mere advisory opinion.

### II. *Federal Court Supervision*

The plaintiffs next assert that, regardless of our disposition of their constitutional and state law claims, this Court should order the district court to supervise the development and implementation of a constitutional reapportionment plan because the defendants have shown an unwillingness to reapportion on the basis of the 1990 census figures. The district court did not, however, consider such a request, and, even assuming that the plaintiffs' complaint implicitly seeks federal court supervision, we would be ill-advised to determine in the first instance whether such supervision is necessary in this case. Such a determination would depend on facts relating to the defendants' diligence in seeking to achieve reapportionment, *see generally Growe v. Emison,* —— U.S. ——, ——, 113 S.Ct. 1075, 1081, 122 L.Ed.2d 388 (1993); *Reynolds v. Sims,* 377 U.S. 533, 586, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964), and those facts are not in the record as it now stands. Accordingly, we decline to entertain the plaintiffs' request for federal court supervision and leave this issue for consideration by the district court if the plaintiffs renew the request and if that court determines that the plaintiffs have properly raised the request in their complaint.

### III. *Disposition*

Having concluded that the constitutional and state law issues raised in this case are now moot, we must dismiss those aspects of the appeal. In addition, we must determine whether the underlying decision of the district court on those issues should be vacated. *See Manufacturers Hanover Trust Co. v. Yanakas,* 11 F.3d 381, 383 (2d Cir.1993). Because the constitutional and state law issues were mooted by virtue of "happenstance" that is not attributable to the plaintiffs, the appealing party, it is our duty to vacate the district court's judgment with respect to those issues in order to "clear[ ] the path for future relitigation of the issues between the parties." *Id.* (quoting *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950)); *see also Karcher v. May,* 484 U.S. 72, 82–83, 108 S.Ct. 388, 391, 98 L.Ed.2d 327 (1987).

We cannot vacate the New York Court of Appeals' decision, rendered upon our certification, as to the state law issue, however. Unlike the constitutional issues, the state law issue has been resolved by the court of last resort for such questions. The plaintiffs are, therefore, properly precluded by the New York Court of Appeals' decision from relitigating the state law issue in the future. Given that the purpose of vacating the district court's judgment on moot issues is to protect the appealing party from being precluded in the future from litigating the moot issues, which have not had the benefit of appellate review, our inability to vacate the New York court's decision is of no concern.

### CONCLUSION

The appeal is dismissed as moot with respect to the issues of whether Local Law Intro. No. 1's use of the total population figure and the three-quarters weighted vote distribution system is constitutionally valid, as well as the issue of whether the total population figure violates section 10 of the New York Municipal Home Rule Law. The district court's judgment is vacated as to those issues. The plaintiffs' request for federal court supervision is denied on the grounds stated. The matter is remanded to the district court with direction to dismiss those aspects of the complaint relating to the moot issues and to consider, if properly raised, the plaintiffs' request for federal court supervision.