**Frank KAPLAN, Individually and as Supervisor of the Town of Fallsburg, Plaintiff–Appellant,**

v.

**COUNTY OF SULLIVAN; The Sullivan County Board of Supervisors; Timothy Hill and Jerome Bullock, as the Election Commissioners of Sullivan County, constituting its Board of Elections, Defendants–Appellees.**

**No. 383, Docket 95–7282.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1995.

Decided Jan. 18, 1996.

James G. Sweeney, Goshen, NY, for Plaintiff–Appellant.

Stephen L. Oppenheim, Monticello, NY, Sullivan County Attorney, County Government Center, for Defendants–Appellees.

Before: FEINBERG, WALKER and CALABRESI, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Frank Kaplan, individually and as Supervisor of the Town of Fallsburg, New York, appeals from a grant of summary judgment in the United States District Court for the Southern District of New York, Charles L. Brieant, J., in favor of defendants-appellees County of Sullivan, the Sullivan County Board of Supervisors, and Timothy Hill and

Jerome Bullock, as Election Commissioners of Sullivan County. Kaplan seeks to set aside a redistricting plan adopted by the Board of Supervisors in September 1994 and approved by the Sullivan County electorate in November 1994. Kaplan contends that this plan, which excludes non-voting prisoners but includes other non-voting groups in the population base for redistricting purposes, dilutes his right to vote in violation of the Equal Protection Clause of the Fourteenth Amendment. Appellees contend that Kaplan does not have standing to bring his claim and that his claim is without merit.

The district court, in an unreported opinion, denied Kaplan's motion for summary judgment and granted appellees' motion. We conclude that Kaplan does not have standing to bring his claim. For reasons given below, the writer of this opinion also states his view that Kaplan has not presented a meritorious federal claim. We affirm the judgment of the district court.

## I. Background

Prior to January 1, 1996, Sullivan County was governed by a 15–person Board of Supervisors (the Board). Frank Kaplan was the Supervisor representing the Town of Fallsburg. Each member of the Board represented one of the 15 towns in the County, and the vote of each member was weighted in proportion to the population base of the town represented. Prisoners incarcerated in New York State prisons located in the County were not included in the population base. All of the prisons in the County are in Fallsburg.

In 1993, the County electorate voted to direct the Board to submit a proposal to the electorate in 1994 for a legislative form of government, in which each legislator would represent one district and would have an equally weighted vote. Such a form of government required redistricting the County to create single-member legislative districts of equal population. The Board retained Professors Michael D. McDonald and Jennifer Willower to help it devise a redistricting plan. McDonald and Willower presented a report to the Board (the Report), which contained 10 possible plans. Although the Re-

port stated a preference for preserving town boundaries, in order to create districts of equal size smaller towns were grouped together while the voters in larger towns were divided up to form parts of two or more districts. Six of the Report's 10 plans excluded non-voting prisoners incarcerated in Sullivan County from the population base.

In September 1994, the Board adopted Plan IV. This plan excluded non-voting prisoners from the population base, but included other non-voting populations such as children and aliens. In November 1994, the Sullivan County electorate approved Plan IV, and on January 1, 1996 it went into effect.

In November 1994, Kaplan instituted this action in the district court, arguing that the redistricting plan violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, Kaplan argued that exclusion of the prisoners, all of whom are located in Fallsburg, unconstitutionally diluted his vote. Defendants Sullivan County and County officials responded on the merits and also argued that Kaplan had no standing because his vote was enhanced by exclusion of the prisoners. The district court did not address the standing issue but held that the Equal Protection Clause did not require defendants to include the prisoners in the population base. The court therefore granted defendants' motion for summary judgment. This appeal followed.

## II. Discussion

In this court, appellant Kaplan principally argues that the failure of the Board to give reasons for the exclusion of prisoners is a violation of New York law and is also a violation of the Equal Protection Clause. Defendants-appellees again argue lack of standing and the absence of a meritorious federal claim.

### A. Standing

■ In order to bring a suit in federal court, a plaintiff must first satisfy the constitutional requirement of standing. A plaintiff must allege an " 'injury in fact,' that is, a sufficiently concrete interest in the outcome of [his] suit to make it a case or controversy

subject to a federal court's Art. III jurisdiction...." *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). Thus, Kaplan cannot require a federal court to address his objections to Plan IV if he cannot show that it disadvantages him. Cf. *League of Women Voters v. Nassau County Bd. of Supervisors,* 737 F.2d 155, 162 (2d Cir.1984), cert. denied, 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 778 (1985). Specifically, to have standing to bring a vote dilution claim, Kaplan must allege that his vote has been rendered less effective than if prisoners were included in the voting base. Cf. *Baker v. Carr,* 369 U.S. 186, 208, 82 S.Ct. 691, 705, 7 L.Ed.2d 663 (1962).

■ Kaplan has not satisfied this fundamental requirement. While Kaplan claims that Plan IV dilutes his vote by excluding prisoners from the population base, this is not so. Under Plan IV, both Kaplan and all of the prisoners reside in the same legislative district. However, the stipulation submitted by the parties shows that Kaplan and the prisoners would be located in different legislative districts under all four of the 10 plans suggested in the Report that include the prisoners in the population base. The result is that if any of these four plans were adopted, Kaplan would share his vote with even more voters than he does now.

This can be demonstrated as follows. The County population is 69,277 if the 1,776 prisoners are included in the population base, and 67,501 if they are not. If prisoners are included in the base, an ideal legislative district for a nine-person Legislature would contain 7,697 people (69,277 divided by nine). Under Plan IV, which excludes the prisoners, an ideal legislative district would contain 7,500 people (67,501 divided by nine). Under Plan IV, Kaplan shares his vote with 7,499 other voters in his district, but if he wins this suit, he shares his vote with 7,696 other voters. Only if Kaplan is in a legislative district with prisoners who are counted in the population base would his vote be enhanced. In such a case, while the population of his district would increase from 7,500 to 7,697, the number of other *voters* in it would actually decrease to 5,920 because 1,776 of the population base would be *non-voting* prisoners. But in none of the four plans suggested to the Board that include prisoners in the base do Kaplan and the prisoners reside in the same district.

Thus, Kaplan would be disadvantaged by winning this suit because his vote would carry even less weight than it does under the plan (Plan IV) he now challenges. Kaplan cannot have a "sufficiently concrete interest" in the outcome of this suit where the relief he requests does not benefit him—and in fact affirmatively harms him. We note, however, that there are other residents of Fallsburg who would have standing to bring this suit—those who, under one of the four proposed plans that include prisoners, remain in the legislative district with the prisoners.

It is true that if we agreed with Kaplan that prisoners have to be included in the population base, Sullivan County might adopt yet another plan, different from the four already proposed, in which Kaplan and the prisoners would reside in the same district. In such a case, Kaplan would be significantly advantaged by winning because, as already indicated, his vote would be shared with fewer other voters. However, since no such plan has even been proposed, this possibility is too speculative to give Kaplan standing.

Kaplan also at times claims that Fallsburg has been "shortchanged" by Plan IV, because "[i]f the prisoners are included in the County base [Fallsburg] will enjoy perhaps two full voting districts, rather than the one currently assigned by Plan IV." Kaplan argues that he has standing to assert the Town's rights. Doubtless that is why Kaplan labels his suit as brought "Individually and as Supervisor of the Town of Fallsburg." But the gravamen of Kaplan's complaint is his assertion that he would suffer "a direct and imminent harm because of a dilution of the strength of *his* vote for a County Legislator under the Plan" (emphasis added). None of the cases that Kaplan calls to our attention, including *Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), stand for the proposition that an individual who has suffered no distinct injury to the effectiveness of his vote nevertheless has standing merely because of his position as an elected official.

## B. Equal Protection Claim

Although my colleagues do not reach the issue, the author of this opinion believes that even if Kaplan did have standing, his claim would fail.[1] Kaplan alleges that Plan IV violates the Equal Protection Clause because it excludes prisoners incarcerated in Sullivan County from the population base. However, the Equal Protection Clause does not require the States to include in the apportionment base aliens, transients, temporary residents, or convicted criminals denied the right to vote.[2] *Burns v. Richardson*, 384 U.S. 73, 92, 86 S.Ct. 1286, 1296–97, 16 L.Ed.2d 376 (1966). Whether to include any such group "involves choices about the nature of representation" that will not be interfered with unless based on a constitutionally impermissible classification. *Id.*

Kaplan relies on *Longway v. Jefferson County Bd. of Supervisors*, 83 N.Y.2d 17, 607 N.Y.S.2d 606, 628 N.E.2d 1316 (1993), for the proposition that New York State law requires inclusion of the prisoners in the population base. Kaplan then argues that the County's failure to follow state law violates the federal constitution. In *Longway*, the New York Court of Appeals did not address whether the exclusion of inmates from an apportionment base was constitutional. The court merely held, on certification from this court, *Longway v. Jefferson County Bd. of Supervisors*, 995 F.2d 12 (2d Cir.1993), that under Municipal Home Rule Law § 10(1)(ii)(a)(13)(c), incarcerated felons were not *necessarily* excluded from the population

base.[3] Although in *Longway* the Court of Appeals noted reasons for including prisoners, 83 N.Y.2d at 22–23, 607 N.Y.S.2d 606, 628 N.E.2d 1316, the court did not require such inclusion.[4] See *Denman v. Sullivan County Bd. of Supervisors*, No. 94–2374 (N.Y.Sup.Ct. Sept. 12, 1995).

Kaplan focuses, however, on the statement in *Longway* that any exclusion "should be made explicitly and well supported with reasons by the Legislature." *Longway*, 83 N.Y.2d at 22, 607 N.Y.S.2d 606, 628 N.E.2d 1316. He argues that these reasons must appear either in the statute or in its legislative history and not merely be furnished, as he says is the case here, by outside consultants such as McDonald and Willower. However, the Report, which was prepared at the direction of the Board, is a part of the legislative history of the redistricting plan. Moreover, it presents sufficient justification for the exclusion of prisoners. Thus, the Report states that "including [the prisoners] as part of the population count of a district would have them constitute 23 percent of an ideal district population. In turn, this holds the potential that the voting weight of voters in other districts could be judged to be diluted relative to a district which includes the 1,776 inmates." It is also worth noting that a joint statement of material facts, submitted by the parties to the district court, stated that the Board knew that all of the prisoners live in a separate environment and do not participate in the life of Sullivan County and

1. It seems prudent to me to discuss the merits of Kaplan's equal protection claim because of the possibility, noted above, that other residents of Fallsburg, whom Kaplan purports to represent, might attempt to bring this claim, and the claim so clearly lacks merit.

2. Inmates in New York State correctional facilities, incarcerated for felony convictions, do not have the right to vote. N.Y. Election Law § 5–106(2).

3. After receiving the answer to its certified question, this court dismissed as moot the constitutional and state law issues raised in the appeal and vacated the district court decision because, in the interim, the apportionment plan challenged had been rejected by the voters of Jefferson County. *Longway v. Jefferson County Bd. of Supervisors*, 24 F.3d 397, 401 (2d Cir.1994).

However, this court could not vacate the New York Court of Appeals decision and noted that the plaintiffs in the action were therefore precluded from relitigating the state law issue involved in that decision. *Id.*

4. In *Longway*, the Court of Appeals held that felons could be included because "there is no requirement in New York's Constitution or the Municipal Home Rule Law that obligates a local legislature, in the context of apportionment, to use the same standards required for voting purposes, specifically, presence and an intent to remain." 83 N.Y.2d at 25, 607 N.Y.S.2d 606, 628 N.E.2d 1316. *Longway* thus specifically disagreed with *Greenwald v. Board of Supervisors of Sullivan County*, 567 F.Supp. 200 (S.D.N.Y.), aff'd, 742 F.2d 1434 (2d Cir.1983), which held that residence for apportionment purposes required both presence and intent to remain.

that the prisoners have been excluded from the population base of the County since the 1980 census.

### III.   Conclusion

In sum, we hold that Kaplan has no standing to bring his claim, with the writer of this opinion stating that, even if Kaplan did have standing, he has no meritorious federal claim. We therefore affirm the judgment of the district court.

WALKER and CALABRESI, Circuit Judges, concurring:

We concur in the judgment and in Judge Feinberg's opinion, with the exception of Part II.B.   We express no view on the merits of Kaplan's claim.