Dear Mr. Bujol:
We are in receipt of your request for an Attorney General's opinion regarding reapportionment, and same has been assigned to me for research and reply. Your question is as follows:
 Whether or not the prisoners housed in the two state prisons located in the St. Gabriel area should be included in the population count for purposes of reapportioning the School Board.
Your letter further states that the School Board believes that the inclusion of these approximately 3,500 non-voters in Iberville Parish distorts all school board election districts.
Our research on this issue reveals two past opinions of this office, Attorney General Opinion Numbers 01-26 and 91-208. No Louisiana cases, either state or federal, address this issue but several cases in New York, state and federal, do give some in-depth review and conclusions on the issue of excluding transients, such as prisoners, from apportionment counts.
The most insightful case is Longway v. Jefferson County Board ofSupervisors, 83 N.Y.2d 17, 628 N.E.2d 1316, 607 N.Y.S.2d 606 (1993), where the Court of Appeals of New York responded to a certified question from the United States Court of Appeals for the Second Circuit,995 F.2d 12, on a question regarding the definition of the term "population" for purposes of local legislative apportionment. The issue was whether the "[t]erm `population as defined by Municipal Home Rule law 10(1)(ii)(a)(13)(c) as ` "residents, citizens, or registered voters", * * * necessarily excludes transients, such as military personnel, incarcerated felons, and occupants of group homes.'". This certified question was answered in the negative because the court did not believe that the definition necessarily excluded the stated classes of persons.
Plaintiffs in this case argued that prisoners, who were included in the census figures, were not residents because they were not domiciliaries, as they had not explicitly expressed a desire to remain permanently. The court in Longway examined the "one man, one vote" requirements ofReynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and referred to the Supreme Court's pronouncements in Avery v. MidlandCounty, Texas, 390 U.S. 474, 484, 88 S.Ct. 1114, 1120 (1968), as follows:
 The Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious. The conclusion of Reynolds v. Sims was that bases other than population were not acceptable grounds for distinguishing among citizens when determining the size of districts used to elect members of state legislatures. We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body.
 This Court is aware of the immense pressures facing units of local government, and of the greatly varying problems with which they must deal. The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems. Last term, for example, the Court upheld a procedure for choosing a school board that placed the selection with school boards of component districts even though the component boards had equal votes and served unequal populations. Sailors v. Board of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). The Court rested on the administrative nature of the area school board's functions and the essentially appointive form of the scheme employed. In Dusch v. Davis, 387 U.S. 112, 7 S.Ct. 1554, 18 L.Ed.2d 656 (1967), the Court permitted Virginia Beach to choose its legislative body by a scheme that included at-large voting for candidates, some of whom had to be residents of particular districts, even though the residence districts varied widely in population.
 The Sailors and Dusch cases demonstrate that the Constitution and this Court are not roadblocks in the path of innovation, experiment, and development among units of local government. We will not bar what Professor Wood has called `the emergence of a new ideology and structure of public bodies, equipped with new capacities and motivations * * *.' R. Wood, 1400 Governments, at 175 (1961). Our decision today is only that the Constitution imposes one ground rule for the development of arrangements of local government: a requirement that units with general governmental powers over an entire geographic area not be apportioned among single-member districts of substantially unequal population.
Specifically, regarding the issue of transients, the Supreme Court has stated in Burns v. Richardson, 384 U.S. 73, 91-92, 86 S.Ct. 1286,1296-1297 (1966):
 The holding in Reynolds v. Sims, as we characterized it in the other cases decided on the same day, is that `both houses of a bicameral state legislature must be apportioned substantially on a population basis.' We start with the proposition that the Equal Protection Clause does not require the States to use total population figures derived from the federal census as the standard by which this substantial population equivalency is to be measured. Although total population figures were in fact the basis of comparison in that case and most of the others decided that day, our discussion carefully left open the question what population was being referred to. At several points, we discussed substantial equivalence in terms of voter population or citizen population, making no distinction between the acceptability of such a test and a test based on total population.
 Indeed, in WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568, decided the same day, we treated an apportionment based upon United States citizen population as presenting problems no different from apportionments using a total population measure. Neither in Reynolds v. Sims nor in any other decision has this Court suggested that the States are required to include aliens, transients, short-term or temporary residents, or persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured. The decision to include or exclude any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere. Unless a choice is one the Constitution forbids, cf., e.g., Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675, the resulting apportionment base offends no constitutional bar, and compliance with the rule established in Reynolds v. Sims is to be measured thereby.
"A `choice the Constitution forbids' is illustrated by Carrington v.Rush, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675, where the Supreme Court held that Texas' absolute prohibition against military personnel exercising their right to vote in `any election in that State' while enlisted in the armed forces was violative of the 14th Amendment's Equal Protection Clause. That decision illustrates that the exclusion oftransients from a voting base will be carefully scrutinized and thus mustbe articulated carefully." Longway, 628 N.E.2d at 1318 (emphasis added).
The question to be answered in Louisiana is whether a local governing body, such as the school board, has the authority or power to provide for it's apportionment on a basis other than that used by the Louisiana legislature [such as a special census], where there is no law on the issue. This fact is recognized in Attorney General Opinion No. 91-208, where we assumed that local government uses the same basis [tabulation of population for each decennial census] as the legislature, where it is prescribed for the legislature in the constitution.
Longway, supra includes a significant discussion on the logicalinclusion of transients, such as prisoners, which merits review. New York's legislative districts and congressional seats are both apportioned based on the number "[o]f inhabitants of the state". Id. Apparently New York's laws do not specify that municipalities use the same base for apportioning as the legislature, just as Louisiana's laws are also silent on this issue. However, the court in Longway discussed the fact that "had the legislature intended to so restrict municipalities [from using the same base for apportioning as the legislature], it would have made that restriction explicit", and concluded that they could not differentiate between the state and local legislative bodies for purposes of the appropriate apportionment base. Id. The court further stated:
 Notwithstanding plaintiffs' position, these transients are also integral parts of their respective communities. Military persons, children, mental patients and prisoners all affect the social and economic character of their environments. Their impact results in employment opportunities and contributes to the tax base. They also use services provided by the municipalities. Thus, their inclusion for apportionment purposes makes sense on several levels.
 628 N.E.2d 1316, 1318.
The Longway court also discussed their decision in Seaman v.Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778 (1965) to clarify that the holding in that case only supported the policy of "[i]nclusion absent specific reasons for exclusion." Further, the court discussed the different standards when comparing an individual's right to vote to actions the legislature may take to facilitate apportionment, stating:
 In Reynolds v. Sims, the Supreme Court stated, `We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement'. [citations omitted] Contrary to the District Court's decision in Greenwald, there is no requirement in New York's Constitution or the Municipal Home Rule Law that obligates a local legislature, in the context of apportionment, to use the same standards required for voting purposes, specifically, presence and an intent to remain. Additionally, we agree with defendants that even though certain citizens within a given population may not have the right to vote, a 12-year-old child for example, that citizen nevertheless would properly be part of the population base for apportionment purposes.
 628 N.E.2d 1316, 1320.
In Attorney General Opinion Number 01-26, we concluded that inmates imprisoned in the unincorporated area should not be included in the population count for purposes of municipal annexation. This opinion was based in part on the definition of "inhabitant" and in part on the fact that local law allows for the taking of a special census when classifying a municipality [R.S. 33:341, 342].
Louisiana's laws also provide for the taking of a special census with regard to school board reapportionment in R.S. 17:71.1, as follows:
 71.1 Authority for reapportionment; basis
 Each of the parish and city school boards, as heretofore created and organized, is hereby authorized to reapportion itself so that each member of said board represents as nearly as possible the same number of persons. However, a school board may provide that one or more of its members may be elected at large as provided in R.S. 17:71.3(B). Any reapportionment shall be based upon the latest federal decennial census, or a special census as authorized by R.S. 17:71.3(A), and shall be accomplished and become effective when a school board has complied with the provisions of R.S. 17:71.4.
LSA-R.S. 17:71.3(A), provides:
 A. Each of the parish and city school boards shall use the latest federal decennial census as the basis upon which to accomplish reapportionment, provided however, that each of said school boards may authorize the taking of a special census to use as a basis for reapportionment. To this end, each of said school boards may employ qualified firms to take such special census, and may employ such other consultants, attorneys, etc. as it deems desirable in order to assist such board in such reapportionment.
In Attorney General Opinion Number 91-208, we concluded, "[s]ince prisoners are included in the tabulation of population for the State of Louisiana where they are located, the Washington Parish Police Jury shall include the inmates at Washington Correctional Institute when working on their reapportionment lines." This opinion was based on the fact that the Louisiana constitution provides for the tabulation of population for each decennial census to be the basis on which the legislature reapportions. That opinion acknowledged that Louisiana's laws do not specify that local reapportionment shall also be based on the tabulation of population for each decennial census, but assumed that local reapportionment should be completed on the same basis as legislative reapportionment. The opinion did not take into account whether a home rule charter or special legislative charter may provide for the taking of a special census for reapportionment purposes, which if it did, may clearly be an alternative basis on which to reapportion. This opinion also did not evaluate whether R.S. 33:361, which provides for municipal powers, authorizes municipalities to provide for the taking of a special census as the exercise of a power necessary, requisite or proper for the management of its affairs.
In sum, while it is our conclusion that a local school board does in fact have the statutory authority to provide for and reapportion by a special census, we are not able to affirmatively state that a school board may exclude transients, such as prisoners. It is our opinion that the decision to do so can only be based on a factual determination by the board and may not be arbitrary or invidious and must take into account not only the reasons to exclude the transients, but also the reasons toinclude them, as discussed in the New York cases.
We hope this opinion offers some guidance in your reapportionment endeavors. If we can be of further assistance in this matter, please do not hesitate to contact our office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb
Date Released: December 20, 2001