**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3211

_____

| | | |
|---|---|---|
| Planned Parenthood of Mid-Missouri and Eastern Kansas, Inc., | * * * | |
| Appellee, Maureen Dempsey, Director of the Department of Health of the State of Missouri; John Doe, 1 thru 99, employees of the State of Missouri, | * * * * * * | |
| Defendants, | * * | |
| v. | * * | Appeal from the United States District Court for the Western |
| Steve E. Ehlmann, David J. Klarich, John D. Schnieder, John E. Scott, Gary L. Burton, Pat Kelley, Bill J. Luetkenhaus, Patrick J. O'Connor, David D. Reynolds, Harry Wiggins, | * * * * * | District of Missouri. |
| Appellants. | * | |

_____

Submitted: January 14, 1998
Filed: February 25, 1998

_____

Before WOLLMAN, BRIGHT and HANSEN, Circuit Judges.

_____

BRIGHT, Circuit Judge.

This case presents the question of whether the appellants, ten Missouri state legislators, can intervene in litigation defended by the Attorney General of Missouri relating to legislation which excludes Planned Parenthood, a Missouri not-for-profit corporation, from continuing to obtain state appropriated funds. The legislative enactment at issue in this case excludes Planned Parenthood from all state funding because Planned Parenthood provides abortion services in Missouri. The ban of state funding applies to Planned Parenthood's family planning activities, which are unrelated to Planned Parenthood's provision of abortion services. The district court determined the legislation at issue in this case to be unconstitutional. The ten legislators seek to intervene in order to appeal the district court's ruling because the Missouri Attorney General does not intend to appeal. The district court denied intervention by the ten legislators on the ground of lack of standing. The legislators appeal. We affirm.

## I. BACKGROUND

The present effort to obtain standing by the ten legislators stems from the unsuccessful efforts of the Missouri Attorney General to sustain the present and prior family planning funding legislation insofar as that legislation excluded Planned Parenthood from receiving family planning funds. We relate the background of the legislation in question.

For several years, the Missouri Legislature has enacted annually a program where the Missouri Department of Health ("the Department") finances family planning services for low income men and women. Prior to 1995, the program appropriation restricted program recipients from using family planning funds to perform or promote abortions. Although the pre-1995 program limited the use of state funds in this manner, the program did not prohibit entities that provided abortion services from participating in the program. In 1995, the Missouri Legislature enacted House Bill 10 ("H.B. 10") which expressly limited family planning funds. The Department interpreted the

language to exclude Planned Parenthood because it is an entity that provides abortion services.

Planned Parenthood provides family planning and related medical services to residents of twenty-six Missouri counties. Planned Parenthood also performs abortions at two of their nine clinics located in Missouri. In addition, Planned Parenthood engages in public advocacy to protect safe and legal access to abortion services for women. Planned Parenthood argued that the legislation unconstitutionally excluded it from eligibility because it was the only entity excluded after receiving funding in previous years and the only entity that provided abortions.

On May 23, 1996, Planned Parenthood sought an injunction contending that the Department relied on an unconstitutional statute in excluding it from funding. Following a hearing, the district court granted Planned Parenthood's motions for preliminary and permanent injunctions. On June 27, 1996, the district court entered an amended order enjoining the Department from: (1) excluding Planned Parenthood from the remaining family planning funds because Planned Parenthood provides abortions and engages in public advocacy of safe and legal abortions, (2) precluding Planned Parenthood from submitting proposals for funding directly or through an intermediary, and (3) evaluating Planned Parenthood's funding proposal using different criteria than that used to evaluate other proposals. The Missouri Attorney General, who represented the Department, did not appeal the district court order.

On May 17, 1996, the Missouri Legislature reenacted the exact provisions of H.B. 10 into H.B. 1010 for fiscal year 1996-97. However, the Department included Planned Parenthood in the program for fiscal year 1996-97 in accordance with the district court's 1996 amended order.

On May 29, 1997, the Missouri Legislature enacted H.B. 20 which set forth portions of the 1997-98 appropriations for the Department. Section 20.685 of H.B. 20

established a three-tiered alternative system for appropriating funds to the Department for family planning services. Specifically, section 20.685 provided in the first tier that the Department could pay or grant family planning funds to public, quasi-public and private family planning organizations that did not provide or promote abortions. If a court determined any portion of the first tier to be unconstitutional, then the Department would administer the program under the second tier. The second tier provided that the Department could grant family planning funds to public and quasi-public family planning organizations but not for private organizations. Again, organizations could not use funds to promote or encourage abortions. If a court invalidated both the first and second tiers, the Department would appropriate funds under the third tier of section 20.685 which provided that the Department would only appropriate family planning funds to public organizations.

Prior to the enactment of H.B. 20, the Missouri Governor expressed opposition to a family planning funding scheme that would exclude Planned Parenthood. Under H.B. 20, the family planning appropriation excluded private entities providing abortion services such as Planned Parenthood. The Governor could have line item vetoed the entire appropriation or he could sign H.B. 20 as enacted. On June 26, 1997, the Governor signed H.B. 20 into law. In a statement accompanying the signing, the Governor acknowledged his obligation to uphold the law stating Planned Parenthood would not receive funds. However, the Governor also stated his intent to direct the Missouri Attorney General to seek clarification from the district court about the applicability of the district court's 1996 injunction.

On June 27, 1997, the Missouri Attorney General filed a motion to clarify and suggestions in support with the explanation that the Department and the Missouri Attorney General desired to comply with the district court's permanent injunction. The ten legislators contend that the Missouri Attorney General did not offer any arguments in support of the constitutionality of H.B. 20. The ten legislators also contend the

Missouri Attorney General failed to attempt to explain the severability of the three-tiered system.

On June 30, 1997 the district court held a brief telephone conference with counsel to hear arguments on the Missouri Attorney General's motion. Later that same day, the district court declared H.B. 20 unconstitutional. The Missouri Attorney General did not appeal the district court's ruling.

On July 25, 1997, the ten legislators, Missouri senators and representatives who voted for H.B. 20, sought intervention on the side of the Department to defend the constitutionality of H.B. 20. The ten legislators' motion to intervene sought leave to intervene as of right, pursuant to section 24(a) of the Federal Rules of Civil Procedure or for leave to intervene permissibly pursuant to section 24(b) of the Federal Rules of Civil Procedure. On July 25, 1997, the Missouri Attorney General filed a response to the motion to intervene stating he did not oppose the motion. On July 30, 1997, Planned Parenthood filed a memorandum in opposition to the motion to intervene. On July 31, 1997, the legislators filed a reply and later that day the district court entered an order denying the motion to intervene, concluding the legislators did "not have the requisite Article III standing to litigate claims . . . ." On appeal, the ten legislators argue they should be allowed to intervene and this court should rule on the constitutionality of H.B. 20.

## II. DISCUSSION

This court reviews the denial of a motion to intervene de novo. United States v. Union Elec. Co., 64 F.3d 1152, 1158 (8th Cir. 1995). The legislators contend that the district court should have allowed the legislators to intervene because they satisfy the four factors necessary for intervention pursuant to Rule 24(a) of the Federal Rules

of Civil Procedure.[1] This court in Mausolf v. Babbitt held "that the Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court." 85 F.3d 1295, 1300 (8th Cir. 1996).[2] Therefore, an intervenor must satisfy both the requirements of Rule 24 and possess standing.[3] Id. The ten legislators argue that they possess Article III standing as legislators and citizens to intervene and litigate the constitutionality of H.B. 20. We disagree.

Under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), a party must establish three elements for Article III standing: (1) the party must have suffered an "injury in fact," consisting of an "invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent [,]" id. at 560 (internal quotation marks and citations omitted), (2) there must be a causal connection between

---

[1]"To intervene as of right, an applicant must (1) have a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." Mausolf v. Babbitt, 85 F.3d 1295, 1299 (8th Cir. 1996).

[2]The Supreme Court has not yet ruled whether intervention requires Article III standing. The circuits have diverse views on the issue. Some circuits do not require standing for intervention. See, e.g., United States Postal Serv. v. Brennan, 579 F.2d 188, 190 (2d Cir. 1978); Associated Builders & Contractors v. Perry, 16 F.3d 688, 690 (6th Cir. 1994); Yniguez v. State of Arizona, 939 F.2d 727, 731 (9th Cir. 1991). At least one other circuit requires standing for intervention. Building and Constr. Trades Dept., AFL-CIO v. Reich, 40 F.3d 1275, 1282 (D.C. Cir. 1994). One circuit has stated that Rule 24 requires more of an interest than that required by Article III analysis. United States v. 36.96 Acres of Land, 754 F.2d 855, 859 (7th Cir. 1985).

[3]The legislators argue they have standing under this court's decision in Chiglo v. City of Preston, 104 F.3d 185 (8th Cir. 1997). However, this court in Chiglo only discussed that the proposed intervenors did not meet all the prerequisites for Rule 24 intervention. Id. Because the proposed intervenors in Chiglo did not meet the requirements of Rule 24, this court did not need to discuss the standing requirement of Mausolf.

the injury and the conduct complained of, where the injury is fairly traceable to the challenged action, and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted).

The ten legislators argue they have standing as legislators for an institutional injury under Coleman v. Miller, 307 U.S. 433 (1939). In Coleman, the Supreme Court decided that twenty state legislators had suffered an institutional injury and therefore had standing to challenge the State Lieutenant Governor's authority to cast a deciding vote in favor of a proposed child labor amendment to the federal constitution. Id. at 438, 446. In Coleman, the twenty legislators had voted against the amendment and the Court concluded that the "senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes." Id. at 438. The legislators argue in this case the Missouri executive branch similarly nullified their votes on H.B. 20 by seeking to clarify the legislation and by colluding with Planned Parenthood to overturn the legislation as unconstitutional.[4]

The ten legislators also attempt to distinguish Raines v. Byrd, 117 S. Ct. 2312 (1997), a recent decision of the Supreme Court relied upon by the district court. In Raines, six members of the United States Congress who voted against the Line Item Veto Act which became law filed suit challenging the constitutionality of the law. Id. at 2315. The members contended that the Act altered the effect of their votes because the President could veto certain measures after he signed them into law. The Court rejected the members' argument that the Act nullified their votes.

The Supreme Court in Raines explained Coleman's limited scope by stating:

---

[4]Specifically, the ten legislators contend that the Missouri Attorney General colluded with Planned Parenthood by not arguing the constitutionality of H.B. 20 under Rust v. Sullivan, 500 U.S. 173 (1991), by not opposing Planned Parenthood's evidence presented in opposition to the motion to clarify, and by agreeing to allow Planned Parenthood to submit additional evidence.

[O]ur holding in Coleman stands (at most . . . ) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.

It should be equally obvious that appellees' claim does not fall within our holding in Coleman, as thus understood.  They have not alleged that they voted for a specific bill, that there were sufficient votes to pass the bill, and that the bill was nonetheless deemed defeated.

Raines 117 S. Ct. at 2319-20 (footnote omitted).

We conclude that under the language in Raines and the Coleman decisions, the Missouri executive branch did not nullify the ten legislators' votes on H.B. 20.  The circumstances of this case do not amount to nullification in the Coleman sense "that a bill [the legislators] voted for would have become law if their vote had not been stripped of its validity . . . ."  See Raines, 117 S. Ct. at 2320 n.7.  In this case, the legislature passed H.B. 20 and the Governor signed the bill pledging to both enforce the restrictions against Planned Parenthood and to seek clarification of the injunction issued by a federal court to insure his administration did not act in contempt of the court's injunction.  Thus, the Missouri executive branch did not interfere in any way with the legislative process.  The ten legislators' complaint merely concerns a  disagreement over litigation strategy decisions made by the Governor and Missouri Attorney General.[5]  See Moore v. House of Representatives, 733 F.2d 946, 952 (D.C. Cir. 1984) (distinguishing between general grievances about governmental conduct and a distortion of the legislative process).  Accordingly, we conclude that this case does

---

[5]Justice Souter cautioned against courts embroiling themselves in a political interbranch controversy between the United States Congress and the President.  Raines, 117 S. Ct. at 2324 (Souter, J., concurring).  Federal courts should exercise this same caution when, as in this case, there exists a political interbranch controversy between state legislators and a state executive branch concerning implementation of a bill.

-8-

not concern a distortion of the legislative process and thus, the <u>Coleman</u> decision does not apply.

<u>Coleman</u> related to whether legislators had standing in a lawsuit where they contended an allegedly illegal action of the Lieutenant Governor nullified their votes. It does not hold that when a court declares an act of the state legislature to be unconstitutional, individual legislators who voted for the enactment can intervene.

We recognize, however, that legislators may obtain standing to defend the constitutionality of a legislative enactment when authorized by state law. <u>See Arizonans for Official English v. Arizona</u>, 117 S. Ct. 1055, 1068 (1997); <u>Karcher v. May</u>, 484 U.S. 72, 82 (1987). The legislators contend they have standing to intervene pursuant to section 188.220 of the Missouri Revised Statutes, which allows taxpayers to bring suit to enforce the provisions of Missouri's laws prohibiting the use of public funds to perform, assist or encourage an abortion not necessary to save the mother's life. The legislators contend they have standing to defend the constitutionality of an appropriations bill that was passed in compliance with the state's asserted interest as expressed by the above statute. We reject this argument as it distorts section 188.205 beyond its clear meaning of granting taxpayer standing to enforce in state court prohibitions against funding abortion-related activities with public funds.

Because the ten legislators lack standing, we do not need to reach the legislators' argument that they meet the requirements of Rule 24.

## III. CONCLUSION

Accordingly, we affirm the district court's denial of the motion to intervene as of right because the legislators lack standing to intervene.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.